E. S. Bonnie & Co. v. Perry's Trustee.

CASE 52—ACTION BY H. R. PERRY'S TRUSTEE IN BANKRUPTCY AGAINST
E. S. BONNIE & CO. TO SET ASIDE A FRAUDULENT CONVEYANCE.—
JAN. 28.

# E. S. Bonnie & Co. v. Perry's Trustee.

APPEAL FROM LOGAN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

BANKRUPTCY—PREFERENCES—SUITS TO SET ASIDE—EVIDENCE—DEPO-
SITIONS— CANCELLATION OF MORTGAGES— LIQUOR LICENSES —
TRANSFER BY INSOLVENT—EFFECT.

Held:   1. Under Bankr. Act July 1, 1898, c. 541, 30 Stat., 564, sec-
tion 67e (U. S. Comp. St. 1901, p. 3449), avoiding transfers
made by a bankrupt within four months prior to the filing of
the petition, except as to purchasers in good faith, and giving
the trustee the right to recover the same, a transfer by a sa-
loonkeeper of his stock and fixtures to a whosesaler, who knew
of his insolvency, and applied a portion of the purchase money
to the discharge of an unrecorded chattel mortgage held by an-
other on the fixtures, and turned over the balance to the saloon-
keeper, was void, and the stock and fixtures, or their value
could be recovered of the wholesaler by the trustee, irrespective
of the adequacy of consideration paid by such wholesaler, or
of whether he himself secured any benefit by the transaction.

2. Nor was the wholesaler entitled to any credit for the amount
turned over by him to the saloonkeeper.

3. In an action by a trustee in bankruptcy to set aside a sale of
the bankrupt's property, the proceeds of which sale were applied
to the discharge of an unrecorded chattel mortgage of the
bankrupt's, it was error to adjudge that the mortgage be can-
celed, the mortgagee not being a party to the suit, and the mort-
gage not being void to the extent that it evidenced a debt,
though it was not a lien against subsequent creditors, and its
validity being a subject for decision by the bankrupt court.

4. Under Kentucky Statutes, 1903, section 4203, et seq., relative to li-
quor licenses, which contemplate that a license be given to a defi-
nite person to sell at a definite place, although section 4198
allows (but does not compel) the authorities to renew a li-

E. S. Bonnie & Co. v. Perry's Trustee.

cense in case of the death or transfer of business by the licensee to his personal representative or the purchaser, a license is a mere personal privilege, and is not transferable, and an attempt by an insolvent licensee to transfer his license to a creditor does not render the creditor who accepts it liable to pay anything for the license to the licensee's trustee in bankruptcy.

5. In a suit by a trustee in bankruptcy to set aside a transfer made by the bankrupt, it was error to admit in evidence as part of a deposition of the bankrupt a copy of his testimony previously given before the referee, which he admitted to be true, and said that he adopted it as part of his deposition.

GIBSON, MARSHALL & GIBSON, and E. B. DRAKE, for APPELLANT.

### POINTS.

1. Evidence given by a bankrupt on a personal examination before a referee is not competent as against a party who was not represented at the examination, and which was conducted by parties adverse to him.

2. A transcript of such evidence can not be made competent in a subsequent action against the party not represented, by merely introducing the bankrupt as a witness, and after a general declaration by him that he reiterates his statements, have him make the transcript a part of the deposition.

3. There was no competent evidence to show that appellant obtained any preference. The incompetent evidence only tended to show an advantage obtained by appellant which did not constitute an illegal preference.

4. Licenses to sell liquor confer a personal privilege on the licensee. They are not property and can not be subjected to the payment of debts. No illegal preference results from transferring them to a creditor any more than in the case of a transfer of a homestead or other exempted property.

5. When a mortgage is set up and the pleader unnecessarily alleges the conclusion of law that it constituted a lien, the validity of the mortgage can not be questioned by merely denying the conclusion of law. There was no issue in this case as to whether the mortgage set aside by the judgment was fraudulent.

### AUTHORITIES CITED.

Kentucky Statutes, sec. 1627; Kentucky Statutes, sec. 4198; Kentucky Statutes, subsec. 4 of sec. 3637; Baldwin & Co., &c.

E. S. Bonnie & Co. v. Perry's Trustee.

v. Crow, &c., 86 Ky., 679, 687; Campbell v. Mosby, Litt. Select Cases, 358; Morton v. Robards, 4 Dana, 258; Righter v. Forrester, &c., 1 Bush, 278; Clift v. Williams, 105 Ky., 558; Cincinnati Leaf Tobacco Warehouse Co. v. Combs, 22 Ky. Law Rep., 553.

J. W. LINTON AND WILBUR F. BROWDER, FOR APPELLEE.

## SUMMARY.

1. A fraudulent vendee is *charged with notice* of fraud on the part of his fraudulent vendor when a fraudulent intent upon the part of the latter is patent upon the face of the transaction, from attendant circumstances and the conduct of the vendor (debtor), at the time the sale is made; although such vendee may deny having *actual* knowledge of such fraudulent intent of the vendor at the time. (Carter & Co. v. Richardson & Co., 22 Ky. Law Rep., 1204.)

2. The chancellor should not have allowed as a credit on a judgment in favor of the creditors of such fraudulent vendor, and against the fraudulent vendee, an amount equal to the amount which such debtor *says he* applied out of the proceeds of a sale of this character, to the payment of the claims of *a part* of his creditors.

3. Under section 496, Kentucky Statutes, no mortgage is valid as against the creditors of an insolvent debtor, or at least, against the claims of *subsequent* creditors of such person, until same is *acknowledged* or proved according to law, and *lodged for record.*

## AUTHORITIES CITED.

Bankruptcy Act of 1898, sec. 58; Bankruptcy Act of 1898, sec. 55; Bankruptcy Act of 1898, sec. 38 (5); Kentucky Statutes, sec. 1906; Kentucky Statutes, sec. 1910; Kentucky Statutes, sec. 496; Kentucky Statutes, sec. 84; Loveland on Bankruptcy, p. 489; Black on Bankruptcy, p. 236; Carter & Co. v. Richardson & Co., 22 Ky. Law Rep., 1204; Louisville Bkg. Co. v. Etheridge Mfg. Co.'s Assignee, 19 Ky. Law Rep., 909; Farmer v. Hawkins, 79 Ky., 182; Wicks Bros. v. McConnell, 102 Ky., 434; Clift v. Williams, 105 Ky., 559.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

This action was brought to set aside a sale of property on the ground that it was fraudulent, made in contempla-

E. S. Bonnie & Co. v. Perry's Trustee.

tion of insolvency, and to prefer the purchaser over other creditors of the seller. The property was the stock and fixtures of a saloon in Russellville, Ky., and unexpired licenses to sell liquor. Perry owned the stock and fixtures, and held licenses expiring the 1st of October, 1903. The sale was made about the 1st of February, 1903. Appellant was an unsecured creditor of Perry's to the amount of about $942. Perry had conducted the business since October, 1901, with the result that at the end of January, 1903, he was practically without any stock of goods, insolvent, and in fear of being closed up by attachment. The stock of goods and fixtures were found by the circuit court to be of not exceeding $1,200 in value. Appellant is a corporation, a wholesale liquor dealer at Louisville, Ky. The purchase of the stock of goods was made after midnight on Sunday night of February 1, 1903, at Russellville. The persons present were the vice president of appellant company, who had learned of Perry's failing circumstances and impending bankrupt condition; the owner, Perry; T. S. Rhea, the latter of whom claims to have held an unrecorded chattel mortgage against the fixtures for about $1,000; and one Dunaven, who had been a traveling salesman for appellant, and who had apprised it of the necessity to take some action to save itself from Perry's collapse. Shortly after the sale to appellant by Perry, the latter, on his own application, was adjudged a bankrupt by the United States District Court for the Western district of Kentucky. This suit was brought by the trustee in bankruptcy against appellant to recover the value of the fixtures and goods bought by it, and to recover the value of Perry's licenses from the State and city of Russellville to vend liquors at retail. The value of the licenses was claimed to be $800. The value of all the property sold

and transferred, including licenses, was claimed to be about $2,300.

Appellant admits that when it bought the property it knew that Perry was "hopelessly and notoriously insolvent;" that it had an unsecured debt of about $942 against him; that its representative went to Russellville in haste on hearing of Perry's pressing financial embarrassment, to look after its interests as his creditor; that it bought the bar fixtures and liquors and cigars without taking invoice; that the trade was made at an unusual hour for business transactions; that the trade was made after an all night conference and negotiation between the debtor creditor and a favored lien-holder and friend; that $1,000 of the purchase money was paid to the lienholder, whose unrecorded mortgage gave him no legal priority over other creditors; that the remaining $200 was turned over in cash to the failing debtor. The trustee claims that the licenses were included in the sale, and that in consideration of their transfer, and the sale of all the other property owned by Perry, appellant's debt was to be satisfied; thus constituting an unlawful preference of appellant as a creditor. On the other hand, appellant asserts that its debt was not, and was not to be, canceled by the trade; that it bought the saloon and liquors to set up Dunaven in that business, in order to collect from him an old account which he was owing appellant, and to continue a customer for their wares. The saloon was in fact conducted in Dunaven's name, but only for a short time by him, when he returned to appellant's service as a traveling salesman, leaving in charge other employes furnished by appellant. The circumstances indicate that it was the purpose of the failing debtor to secure at least two of his creditors to the exclusion of all others, viz., appellant and Rhea. The means adopted was to sell the saloon and contents to appel-

lant at a low figure, including the licenses, and out of the proceeds to settle Rhea's unsecured debt. The scheme was in direct contravention of the United States bankruptcy statute Act July 1, 1898, c. 541, 30 Stat., 544 ( U. S. Comp. St., 1901, p. 3418). Nor does it matter whether the purpose of it was to gain an advantage by appellant as creditor, or to get an advantage by Rhea without profit to appellant, but with its knowledge of the debtor's purpose. The effect of the federal statute is somewhat broader than the State statute against preferences. It renders the preference of one creditor to the exclusion of others by an insolvent debtor a fraudulent act. Whoever, with knowledge, or notice equivalent in law to knowledge of the debtor's insolvent condition and purpose, buys his property, even for a fair consideration, takes it subject to the right of the trustee in bankruptcy to sue for and recover it if within four months of the act of preference the debtor is declared a bankrupt. See section 67e of the act of Congress of 1898 (30 Stat. 564 (U. S. Comp. St., 1901, p. 3449]). Only innocent purchasers for fair value are protected by the act. The sale and transfer are void if the act is violated, whether by a creditor or purchaser. It might matter little to other creditors if a failing creditor could sell his property, even for fair value, to one with knowledge of his purpose to abscond with the proceeds, or to otherwise unlawfully apply them, if they could not get at the tangible property in the hands of the purchaser. It being clear to us that the act of bankruptcy committed by Perry on the night of February 1st was in fraud of his creditors, whether appellant was or was not a beneficiary of it, we have not stopped to consider the question so much discussed whether appellant really paid a fair consideration for the bar fixtures and liquors and cigars. The

transaction was such that, under the circumstances, appellant ought to have kept out of it.    But it took chances of its not being attacked by creditors.    The trustee ought to recover the property thus placed beyond the reach of the creditors, or, if the property can not be had, then he ought to recover of the guilty purchaser its value.    The circuit court adjudged the transaction fraudulent, and that appellant either return the property to the trustee within a named time, or to pay him $1,000 for it.    We are of opinion that the court was right in holding the transaction to be fraudulent as to creditors, and in holding that appellant was such a purchaser as was to be protected; but we think the judgment should have been for the return of property, or its proven value, $1,200.    Appellant was no more entitled to credit for the $200 he paid to Perry than for the $1,000 he paid to Rhea.

The circuit court furthermore decided that the mortgage to Rhea was void, because not recorded, and that it did not constitute a lien on the property.    It was adjudged to be canceled.    Rhea was not a party to the suit.    Although the unrecorded mortgage may not have been, and was not, a lien as against at least subsequent creditors, it evidenced a debt, and to that extent, so far as the record before us shows, was not void. At any rate it should not have been canceled.    Its validity is more properly the subject now for decision by the bankrupt court.

The court further decided that the appellant pay to the trustee $800, the value of the liquor licenses attempted to be transferred to it by Perry.    A license to retail liquors in this State is a personal privilege only.    It is confined by statute to the place and person named in the order granting it.    Section 4203, Ky. St., 1903. : Although by section

4198, when the owner of a license dies, or sells his stock or place of business, the authorities may renew the license to the personal representative, widow, or purchaser, they are not required to. Indeed, the fitness of the person proposing to exercise the license is always one of the main things considered in granting it. It can not be sold for debt under execution or attachment. It is an intangible privilege, without vendible value or quality. It might be abandoned by its owner, or be revoked at any time for certain causes by the public authority granting it. It is not transferable. The fact that the city council and county court are allowed to transfer it without additional charges upon the application of the owner does not give him the right to transfer it. That he has donated it—or attempted to give it—to one of his creditors, although insolvent, can not make such creditor liable to the trustee in bankruptcy for the value of the license. The object of the statute is to hold only that liable to debts which could be subjected by law to their payment. The licenses in this case do not appear to have been really transferred by the city or county authorities. It was done only by the licensee. We are of opinion that the court erred in adjudging appellant to pay anything for the licenses.

Before this suit was begun, Perry was called before the referee in bankruptcy for examination pending his application to be adjudged a bankrupt, and was questioned at considerable length by counsel representing certain creditors, by the referee, and by his own counsel. Appellant does not appear to have been present or represented. A stenographic report of his testimony was preserved. Much of it tends to show his motive and condition at the time of the sale attacked in this suit. In the preparation of the case he was introduced as a witness by the trustee (appellee). He was shown what purported to be a copy of his testimony

given before the referee, and asked whether it was true, and whether he would adopt it as a part of the deposition then being given. He said it was true, and he would and did adopt it. It was thereupon filed as a part of his deposition. Appellant's exceptions to it were overruled, and it was considered by the court.    Although we find enough evidence in the record to sustain the conclusion at which we have arrived without regarding the interpolated copy from the referee's office, we must condemn the practice of presenting evidence in that form.    Whether the stenographer who took the notes of the testimony was duly sworn, or whether the copy is authenticated as it should have been to have entitled its reception, we do not consider; for, if so, its injection in that form as the testimony of the witness in this case was still an improper practice.    It was incompetent as evidence in this case.    It is nothing here, at best, but hearsay.    The fact that the witness said that he said it on another occasion and in another action makes it none the less hearsay.    The right to confront the witness, to see and hear him testify, to cross-examine him upon the points in issue in the instant suit, to have his own language reported, are matters of right given to a party, and of inestimable value to the court in its endeavor to arrive at the truth.    The exceptions to that part of the deposition should have been sustained.

The judgment is reversed on both the original and the cross-appeal.    The cause will be remanded for proceedings governed by this opinion.

Petition for modification and extension of opinion by appellant, overruled.