## In re SEIFFERT et ux.

(District Court, D. Montana. September 2, 1926.)

**1. Bankruptcy ⊕⇒408(3)—Wages and growing crops constitute part of estate in bankruptcy, required to be scheduled, as affecting right to discharge.**

Wages earned and payable at time of adjudication and growing crops belonging to bankrupt are part of bankrupt estate, required to be scheduled, as affecting right to discharge after concealment.

**2. Bankruptcy ⊕⇒143(1)—Test whether property is part of bankrupt's estate is whether it was transferable, or subject to levy or sale under judicial process (Bankruptcy Act, § 70a [Comp. St. § 9654]).**

Under Bankruptcy Act, § 70a (Comp. St. § 9654), test whether property is part of bankrupt's estate is whether it could have been transferred by any means, levied on or sold under judicial process.

**3. Assignments ⊕⇒18—Either party may generally make assignment of rights under contract.**

Generally either party to contract may make valid assignment of his rights under it.

**4. Bankruptcy** ⟨⇒408(3)—**Bankrupt held not required, as affecting right to discharge, to schedule as asset unperformed contract of employment for specific wage or share of crop at his option (Bankruptcy Act, § 70a [Comp. St. § 9654]).**

Unperformed contract of employment by bankrupt, providing for specific wages or share of crops at his option, *held* not transferable or subject to levy and sale under judicial process within meaning of Bankruptcy Act, § 70a (Comp. St. § 9654), and not required to be scheduled as an asset.

In Bankruptcy. In the matter of the bankruptcy of Criss Seiffert and wife. On objections by the Moore Hardware & Implement Company to petition for discharge. Discharge granted.

John Jacob Jewell, of Hobson, Mont., for bankrupts.

E. K. Cheadle, Jr., of Lewistown, Mont., for objecting creditor.

PRAY, District Judge. Objections by the Moore Hardware & Implement Company, of Moore, in Fergus county, to the petition for discharge of above-named debtors, were referred to a special master, Ralph J. Anderson, Esq., of Lewistown, who, after taking the testimony, made his findings and conclusions apparently from his own independent investigation of the law, as no briefs or memoranda of authorities for either side appear in the files.

Concealment of assets and false oath to the schedules are the two grounds upon which the opposition to discharge is based. The evidence offered before the special master related principally to a certain contract and property acquired thereunder by the debtor, Criss Seiffert. The material facts follow: On the 26th day of March, 1924, debtors made affidavit that schedule B, attached to the petition, was a statement of all their estate, both real and personal. The petition and schedules were filed on the 10th day of April, 1924, and debtors were duly adjudicated as bankrupts on April 12th, 1924. On November 1, 1923, said Criss Seiffert entered into an agreement with one Herbert Woodward, as second party and employer, providing that the former should take charge of, manage, and superintend a certain farm for a period of two years from the 1st day of October, 1923, which property employer, a banker, had acquired from bankrupts on account of their indebtedness to him, evidenced by their notes, secured by real estate and chattel mortgages. Second party agreed to furnish certain live stock and implements for farm work. Employee was to conduct all farming operations, care for all property intrusted to him, and make certain repairs. The contract describes specifically and at length the particular duties to be performed by employee and in detail the manner of their performance, and the latter was to have, in return for his services, the right to occupy the premises as a home for himself and family, the use of certain milk produced on the farm, certain live stock and poultry of his own, a garden of not to exceed one acre, and in addition thereto he was to receive either wages at the rate of $40 per month, or at his option, to be exercised not later than 10 days after threshing time, two-thirds of the grain and seed crops produced on the premises, and, if he accepted the latter, certain reimbursements were to be made to second party for cash expended by him under the terms of the contract. This contract was in full force at the time of bankrupt's adjudication, and there was then planted and growing on the premises, pursuant to the terms thereof, certain winter wheat, from which was harvested in the fall of 1924 about 5,500 bushels. At threshing time debtor exercised his option to receive two-thirds of the grain, and sold it for 95 cents per bushel, and retained the proceeds of sale. This contract does not appear among the schedules which were the basis of debtor's adjudication in bankruptcy. The real question for determination seems to be, Did debtor's interest in the contract at the time of filing his petition amount to property such as should have been included in his schedules, was it susceptible of assignment, and could the trustee in bankruptcy have performed the contract and acquired property thereunder for distribution to creditors?

[1] If any wages were earned and payable at the time of adjudication, they were a part of the estate in bankruptcy; likewise a growing crop belonging to bankrupt at that time would be a part of the estate, and should have been scheduled. In re Driggs (D. C.) 171 F. 897; 7 C. J. 113 and 116; In re Barrow (D. C.) 98 F. 582.

[2, 3] The principal test seems to be, whether the property in question prior to the filing of the petition could by any means have been transferred by bankrupt, or whether it might have been levied upon and sold under judicial process against him. Bankruptcy Act, § 70a (Comp. St. § 9654). As a general rule of law, either party to the contract may make a valid assignment of his rights under it, but a personal service contract might afford an exception to the rule. Do the terms of the contract seem to require personal con-

fidence and skill on the part of the second party? He agreed "to take charge of, manage, and superintend," for the first party, the operations of a farm, according to specific instructions set forth in the contract. The principal object of the bargain here was not alone for personal service, but for care, management, and superintendence, calling for the exercise of judgment and skill on the part of the employee, in whom the employer by the language of the contract expressed his confidence.

The next question to determine is whether an action could have been maintained at the time of adjudication for the recovery of wages from the date of execution at the rate of $40 per month. Wages in that amount were provided in the contract for a period of two years, but no reference is made to the time of payment except that paragraphs 16 and 17 provide: "That employee is to have the right at his option to take, in lieu of the $40 per month salary hereinbefore referred to, two-thirds of the grain and seed crops produced on the land, in either the years 1924 or 1925, said grain or seed crops to be delivered to the employee at the machine. It is agreed, however, that, if the employee elects to exercise this option, then he shall pay the employer all sums expended by the employer in the purchase of seed or in the payment of labor, binder twine, and threshing bills, together with 10 per cent. interest on such sums which have been so expended by said employer, from the date of said expending up to the time of their repayment to said employer. It is further understood and agreed that this option of the employee must be exercised not later than 10 days after the completion of the threshing of the grain; * * * that, if this option is exercised by the employee, he must deliver to the elevator the one-third of the grain and seed crops which remain to the employer."

It seems probable that, if the parties intended that the salary was to be paid at the end of each month, they would have so stated in the contract, and furthermore, if such were the intention of the parties, in paragraphs above quoted would have appeared a provision requiring employee, if he elected,

to take grain instead of salary, to pay back the salary received by him or deduct it from proceeds of sales of grain, or account for it in some definite manner. There does not seem to be, as a matter of fact, any contention on the part of the objectors as to whether any salary was paid or to be paid by the month or until the time arrived for exercising the option; and this phase of the contract was not even alluded to by counsel for either side at the hearing before the special master.

In the absence of specific terms, the only reasonable conclusion seems to be that a settlement was to be made with employee at the time the option was to be acted upon, and that such settlement actually occurred in performance, showing the interpretation by the parties themselves. It appears from the testimony of bankrupt, wherein he stated that the threshing occurred in September, 1924, that at that time he decided to accept two-thirds of the crop and pay the expenses agreed upon instead of wages at the rate of $40 per month.

[4] At the time of filing petition and adjudication, the contract had not been performed, so that apparently no recovery could have been had thereon, nor could an assignment have been made. Therefore it does not appear that any good purpose would have been served had bankrupt listed this contract among his assets, and consequently I am obliged to hold that the charges preferred against the bankrupt, Criss Seiffert, have not been sustained, and, in the instance of Estella Seiffert, they have no application whatever. 4 Rem. §§ 1395–1401; 5 C. J. 882; Edison v. Babka, 111 Mich. 235, 69 N. W 499; Fitch v. Brockmon, 3 Cal. 348; In re Beahn (D. C.) 212 F. 762; Bonnie v. Perry, 117 Ky. 459, 78 S. W. 208; In re Ghazal (C. C. A.) 174 F. 809; Cohen et al. v. Bacharach (C. C. A.) 229 F. 385; Winslow v. Dundom et al., 46 Mont. 71, 82, 125 P. 136; 39 C. J. 145; Waite v. Shoemaker & Co., 50 Mont. 264, 276, 146 P. 736; In re Doherty (D. C.) 135 F. 432. Accordingly the report of the special master is approved, and the petition for discharge of bankrupts is granted.