## In re MILLER.

## MILLER v. MUTUAL HOLDING CO.
### No. 7567.

Circuit Court of Appeals, Sixth Circuit.
Jan. 16, 1939.

Andrew M. Henderson, of Youngstown, Ohio (Henderson, Wilson, Wyatt & Ranz, Andrew M. Henderson and John H. Ranz, all of Youngstown, Ohio, on the brief), for appellant.

Guy T. Ohl, of Youngstown, Ohio (McKain, Ohl & Swanner, of Youngstown, Ohio, on the brief), for appellee.

Before HICKS, SIMONS and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

Thomas W. Miller, fifty-one years old, had been engaged intermittently in coal stripping operations for many years. He had known Hugh H. Hamilton for more than twenty. In the summer of 1933 he talked with Hamilton about stripping coal from land owned by Mrs. Gaskill. He was, himself, unable to finance the project and sought the aid of Hamilton. They inspected the land and talked a number of times about different details of the proposition. They agreed that Hamilton would put up money to operate; that Miller would receive a salary of $150 a month and that after Hamilton was reimbursed to the amount of his investment out of the profits they would form a corporation or partnership and go "fifty-fifty." It was contemplated that Hamilton would be required to pay in $8,000, although there was no definite agreement as to the amount.

Hamilton purchased the land and took title to himself. Miller took charge; a shovel was bought and a siding built. The coal was opened, bumps put in, barns built and machinery and equipment bought. With Miller acting as general manager, operations were commenced about the 7th of June and continued until the 7th of August. Four or five hundred tons of coal were taken out. Shortly after August 7 Hamilton and Miller talked about the necessity for a larger shovel. They looked at one and got a price on it but did not buy it. On August 7 Hamilton told Miller that he had spent more money than he intended to spend, that he was going to shut the mine down, and that he, Miller, would be out of a job and "would be done there."

Hamilton declined to recognize Miller's claim to an interest and told him that he was going to sell the plant; but paid Miller's salary up to the first of September. Miller did no further work after August 7 except to sell the coal on hand, on commission, and about the first of October Hamilton and Miller severed their relations altogether.

Miller filed his voluntary petition on September 8, was adjudicated a bankrupt on the same day. He received his discharge on December 6 following. Some time after the adjudication Hamilton recommenced mining operations on his own account and declined to reinstate Miller.

On January 6, 1934, Miller, relying upon his contract, brought suit in the Court of Common Pleas of Mahoning County, Ohio, against Hamilton for damages for a breach of the contract and for an accounting. The suit resulted in a judgment in Miller's favor for $5,516.30. He had not listed the claim upon which he sued in his schedules filed in bankruptcy.

On October 25, 1935, the City Trust & Savings Bank, a creditor (predecessor to appellee, The Mutual Holding Company), filed a petition to reopen the bankruptcy case for the purpose of administering the judgment against Hamilton as an asset of Miller's estate. Miller resisted upon the ground that the contract upon which the judgment was obtained was for personal services requiring the exercise of skill and judgment upon his part and that

Hamilton had entered into it by reason of his confidence in Miller's peculiar ability to supervise and manage the mining operations, and that therefore his, Miller's, interest in it was not transferable to his trustee. The Master reported that the petition should be denied. The Court overruled the Master and granted it.

Miller's contention has merit. He was an experienced miner. He had, for over fifteen years, built up some knowledge of, and aptitude for, coal stripping operations. It was his acumen that led to the discovery of the particular mine involved. He offered to operate it if Hamilton would finance it. We do not think that Miller's rights, under such a contract, passed to his trustee. They depended upon the personal performance of his obligations. The trustee very probably would have been wholly unfit to operate the mine and Hamilton would not have been required to accept his services. Florance v. Kresge, 4 Cir., 93 F.2d 784, 787. The opinion quotes from Arkansas Valley Smelting Co. v. Belden Min. Co., 127 U. S. 379, 387, 8 S.Ct. 1308, 1309, 32 L.Ed. 246, as follows: "Every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent." See, also, In re Seiffert et ux., D.C., 18 F.2d 444; In re Myers, 7 Cir., 208 F. 407.

Moreover, the judgment sought to be administered did not grow out of any breach by Hamilton committed prior to Miller's adjudication. It is true that before that time Hamilton had refused to invest additional money and this closed the operations but by the terms of the contract he was not required to invest more. It is clear enough that Miller "as of the date he was adjudged bankrupt" had no "right of action arising upon contract" with Hamilton. Bankr.Act § 70a (6), 11 U.S.C.A. § 110(a) (6). See Villar & Co., Inc. v. Conde, 1 Cir., 30 F.2d 588, 590. The record clearly indicates that the judgment arose out of Hamilton's breach in reopening the mine after the adjudication without the services of Miller.

The order appealed from is set aside and the case remanded with directions to dismiss the petition.