**In re Terry L. McVAY, Debtor.**

**Bankruptcy No. 92–29956–D.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

June 17, 1994.

---

Ronald Tuech, Memphis, TN, for trustee.

N. Alan Lubin, Memphis, TN.

## ORDER ON MOTION FOR INSPECTION OF FILES AND DOCUMENTS

BERNICE BOUIE DONALD,
Bankruptcy Judge.

This core proceeding[1] came on for hearing on motion of the Trustee seeking to inspect certain legal case files of the debtor, which files were transferred to certain other attorneys prior to the petition filing date.

As basis for the motion, the Trustee asserts the following:

1. That the above-referenced case was converted to chapter 7 on November 30, 1993, and the first meeting of creditors was set on March 7, 1994. The first meeting of creditors was subsequently reset to March 21, 1994. At the first meeting of creditors, the debtor indicated that prior to the filing of the initial bankruptcy petition, he had transferred pending personal injury case files to several attorneys, including Mike Tucker and Alan Lubin.

2. That efforts to ascertain the values of the respective case files have been hampered because the respective attorneys assert the attorney/client privilege.

3. That efforts toward resolving a prospective fraudulent conveyance and/or preference action against the two attorneys have been hampered.

4. That an inspection of the above-referenced pending case files is necessary to ascertain the true value of said pending cases.

In response to the Trustee's motion, Tucker and Lubin filed a motion to quash the Trustee's motion and seeking sanctions. The respondents contend that there is no estate interest in the files since they were transferred pre-petition, that the debtor retained no interest in the cases, and that the attorney/client privilege prohibits respondents from voluntarily complying with the Trustee's request.

The narrow, but considerable issue for the Court to determine is whether cause exists to permit the requested inspection, and whether the attorney client privilege is paramount to the Trustee's statutory duty to investigate matters affecting the administration of the estate. However, there is a threshold issue of procedural propriety and due process.

F.R.B.P. 2004 is the procedural rule which governs examination and inspection of the nature sought by the Trustee. However, a 2004 Examination is to be conducted in conjunction with a pending adversary proceeding under F.R.B.P. 7001 or a contested matter under F.R.B.P. 9014. There is asserted no such matter pending on the instant cause. Indeed the Trustee appears to be seeking an opportunity to determine whether any prospective causes of action may potentially exist.

The Court is mindful and sensitive to the section 704 statutory duties of bankruptcy trustees so as to allow the fostering of the fundamental Congressional purpose to promote equality of distribution to creditors.

Although Congress has armed bankruptcy trustees with special statutory weapons to accomplish this worthy goal, the Court is also mindful that trustees are not omnipotent. Actually, the trustee, in relevant part here, essentially is clothed only with the status of a hypothetical judicial lien creditor on the date of the commencement of this case. The Trustee cited the case of *Commodity Fu-*

---

1. 28 U.S.C. § 157(b)(2)(A) and (O).

*tures Trading Com'n v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), for the proposition that the trustee of a corporation in bankruptcy has the power to waive the attorney/client privilege as to pre-bankruptcy communications. That holding is inapposite to the instant case. In *Commodity Futures,* the debtor was a corporation. The interim trustee sought to investigate the affairs of the debtor, including misappropriation of funds by CDCB's officers and employees. During a deposition pursuant to a valid subpoena, Weintraub, former counsel for CDCB, asserted the attorney/client privilege and refused to answer questions.

The instant case may be distinguished factually and legally, in that the subject case represents personal service contracts, where the fiduciary duty runs from the attorney of record to the ultimate client.

■ Ordinarily, personal services contracts cannot be assumed or assigned by bankruptcy trustees because they are based upon personal services or skills or upon personal trust or confidence. *See,* Section 365(c)(1)(A); *In re Miller,* 101 F.2d 323 (6th Cir.1939).

In *In re Noonan,* 17 B.R. 793, 798 (Bankr. S.D.N.Y.1982), the court stated:

"For policy, practical and constitutional reasons, these contracts [personal service contracts] are sui generis."

Moreover, courts of equity historically have refused to compel individuals to abide by such contracts upon the commencement of a bankruptcy case. Cf. 4 Pomeroy, Equity Jurisprudence (5th ed.) section 1343 at pp. 943–944; 5A Corbin, Contracts, section 1204, cited in *In re Noonan,* 17 B.R. at p. 798.

■ It is observed here that even assuming the bankruptcy Trustee is ultimately successful under some fraudulent conveyance theory and has the status quo restored, absent the consent of the other parties (the clients) to the personal service contracts, the bankruptcy Trustee could not pursue these contracts, as such parties may retain the attorney of their choice. That is, the bankruptcy Trustee cannot force them to use an attorney of the Trustee's choice. Further,

the Trustee does not step into the shoes of the Debtor as to these contracts.

■ Typically in such matters, upon the commencement of a bankruptcy case any monies owed the debtor, of course, become property of the section 541(a) estate, and the other parties to personal service contracts are free to select a lawyer of their choice rather than having a bankruptcy Trustee represent them.

■ Further, typically, the bankruptcy trustee needs to know who owes what and how much, if any, to the estate. Clearly, trustees are not entitled to know everything about everything, but are entitled to know particular financial arrangements. An equity court has some discretion in such matters, as in the instant matter. The Court is inclined to say at this time without a finding or holding that the Trustee is entitled to know the names and addresses of the transferee attorneys and also the names and addresses of the clients. However, the matter is not ripe for decision. It may be eventually that the Trustee may inquire of the transferee attorneys regarding financial arrangements, if any, between the debtor and such attorneys. If the transferee attorneys have agreed to forward any monies to the debtor, such monies would be property of the section 541(a) estate. But this decision also will be reserved for another day.

After inquiring of the transferee attorneys the names and addresses of transferred clients, and financial arrangements between Debtor and transferee attorneys, if the Trustee is still not satisfied, he may seek a F.R.B.P. 2004(a) examination to ascertain the financial arrangements. Moreover, if such motion is filed, it shall be set for hearing with notice to all interested parties. No ex parte Rule 2004(a) order will be signed in such matters. The Trustee should have no direct contact with the clients since they are now represented by attorneys in the bankruptcy matters.

This is as far as the Court is prepared to go at this time. This holding is without prejudice to the Trustee to review the request at a later time to inspect the full files in question.

Based on the foregoing, the Trustee's motion to inspect the files is denied without legal prejudice.

The Court will summarily deny the respondent's motion for sanctions as the Court finds that while the Trustee's motion was not well-founded, it cannot be deemed to have been frivolous.

**IT IS SO ORDERED.**