RECOMMENDED FOR FULL-TEXT PUBLICATION
*File Name: 17b0006p.06*

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: LINDA S. ISAACS,

*Debtor*.

LINDA S. ISAACS,

*Plaintiff-Appellee*,

*v.*

DBI-ASG COINVESTER FUND III, LLC,

*Defendant-Appellant*.

No. 16-8041

Appeal from the United States Bankruptcy Court
for the Western District of Kentucky at Paducah.
No. 14-50679; Adv. No. 14-05021—Thomas H. Fulton, Judge.

Argued: February 7, 2017

Decided and Filed: July 3, 2017

Before: HUMPHREY, PRESTON and WISE, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:** Gregory A. Stout, REISENFELD & ASSOCIATES, LLC, LPA, Cincinnati, Ohio, for Appellant. Marcus H. Herbert, Paducah, Kentucky, for Appellee. **ON BRIEF:** Gregory A. Stout, REISENFELD & ASSOCIATES, LLC, LPA, Cincinnati, Ohio, for Appellant. Marcus H. Herbert, Paducah, Kentucky, for Appellee.

HUMPHREY, J., filed the opinion of the Bankruptcy Appellate Panel in which PRESTON, C.J., joined. WISE, J. (pp. 21–23), filed a separate opinion concurring in the result.

---

**OPINION**

---

GUY R. HUMPHREY, Bankruptcy Appellate Panel Judge. The record below evidences that a stay violation occurred during a previous bankruptcy case, apparently without Appellee Debtor Linda Isaacs' knowledge, ten years prior to her current bankruptcy filing. Between the two bankruptcy cases, a state court adjudicated the scope of Isaacs' discharge, finding a mortgage lien valid and enforceable. The state court scheduled a foreclosure sale, prompting Isaacs to file a second bankruptcy case and a complaint against Appellant Creditor DBI-ASG Coinvester Fund III, LLC, seeking relief from the subject mortgage under 11 U.S.C. § 544(a)(1) and (a)(3).[1] The parties filed cross-motions for summary judgment. Construing the mortgage's language, the bankruptcy court held that the mortgage lien did not attach to Isaacs' real property because the initial mortgagee did not record its mortgage until after Isaacs and her husband filed their prior bankruptcy case and while the automatic stay was in effect. The bankruptcy court thus found that the debt associated with the mortgage was unsecured when the first petition was filed and was discharged in the prior case. As a result, the bankruptcy court held that Isaacs could avoid the mortgagee's lien in this proceeding. The bankruptcy court also declared void *ab initio* the state court foreclosure judgment finding the mortgage to be valid, concluding that it impermissibly modified the chapter 7 discharge order.

For the reasons stated below, the Panel **REVERSES** the bankruptcy court's judgment and **REMANDS** this case to the bankruptcy court for dismissal. While the entire Panel agrees that the bankruptcy court's judgment should be reversed for a lack of subject matter jurisdiction on the basis of the *Rooker-Feldman* doctrine, the reasoning of the majority and the concurrence differ.

The majority reasons that the *Rooker-Feldman* doctrine precluded the bankruptcy court from avoiding the state court foreclosure judgment because the mortgage was enforceable against the Isaacses' interests on the chapter 7 petition date. Since unavoided pre-petition liens

---

[1]Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

pass through bankruptcy unaffected, the state court foreclosure judgment could not violate the chapter 7 discharge. The concurrence reasons that *Rooker-Feldman* should be applied without an analysis of the enforceability of the mortgage on the chapter 7 petition date because the foreclosure was solely an in rem action, and the discharge provided by § 524 only precludes in personam collection efforts.

## ISSUE ON APPEAL

Although the mortgagee raised a number of issues on appeal, this opinion focuses on a single, and ultimately dispositive issue: whether the bankruptcy court lacked subject matter jurisdiction to consider the claims in Isaacs' complaint owing to the *Rooker-Feldman* doctrine.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. DBI-ASG Coinvester Fund III, LLC (the "Mortgagee") initially took this appeal to the United States District Court for the Western District of Kentucky. On October 4, 2016, in accordance with 28 U.S.C. § 158(b)(6), that court issued General Order No. 2016-05 to authorize this Panel to hear and determine appeals from the United States Bankruptcy Court for that district. The General Order also transferred all then-pending appeals from that district's bankruptcy court to this Panel. Upon transfer, no party filed a timely election to "opt out" and have the district court hear this appeal. 28 U.S.C. § 158(c)(1).

Under 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the bankruptcy court. An order is final for purposes of appeal if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation and quotation marks omitted). A bankruptcy court's grant of summary judgment resolving an adversary proceeding on its merits is a final, appealable order. *Lyon v. Eiseman* (*In re Forbes*), 372 B.R. 321, 325 (B.A.P. 6th Cir. 2007). The order before the Panel grants a summary judgment to Isaacs and fully disposes of the adversary proceeding, making it a final order. *Geberegeorgis v. Gammarino* (*In re Geberegeorgis*), 310 B.R. 61, 63 (B.A.P. 6th

Cir. 2004) ("[A]n order that concludes a particular adversarial matter within the larger case should be deemed final and reviewable in a bankruptcy setting.") (citations omitted).

A bankruptcy court's legal conclusions are reviewed de novo. *Grant, Konvalinka & Harrison, PC v. Banks* (*In re McKenzie*), 716 F.3d 404, 411 (6th Cir. 2013). "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citation omitted). Appellate courts review challenges to subject matter jurisdiction based on the *Rooker-Feldman* doctrine de novo. *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006). Contract interpretation is a matter of law, which is reviewed de novo. *Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 259 (6th Cir. 2012).

## FACTS AND PROCEDURAL HISTORY

The facts of this case, though not in dispute, are unusual. Linda Isaacs ("Isaacs") and her spouse, Michael Isaacs, (collectively the "Isaacses") executed a Home Equity Line of Credit Agreement in February 2003. The parties stipulated that "[t]he agreement, or note, was secured by a second mortgage to GMAC Mortgage Corporation encumbering the property commonly described at 494 Hwy 819, Princeton, KY within Lyon County." (the "Property") (Stipulation of Facts at 1, ECF No. 68.)[2] The second mortgage states: "The lien of this Mortgage will attach on the date this Mortgage is recorded." (Stipulation of Facts, Exhibit C ("Mortgage"), ECF No. 68-3.)

The Isaacses filed a joint chapter 7 bankruptcy petition in March 2004; their petition listed their debt owed to GMAC related to the Mortgage as secured debt. Apparently unknown to the Isaacses, however, GMAC did not record the Mortgage until June 2004, three months after they filed bankruptcy and while the chapter 7 case was pending. At no time did GMAC seek an order to modify, lift or annul the automatic stay. Nor did any party seek to avoid the Mortgage during the pendency of the chapter 7 case. Subsequently, the Isaacses obtained a discharge, and the chapter 7 case was closed in August 2004.

---

[2]Unless otherwise noted, all cites to the record are found in the electronic docket of *Isaacs v. RoundPoint Mortgage Servicing Corp.*, Adv. Case No. 14-05021 (Bankr. W.D. Ky.).

In August 2005, the Isaacses moved to reopen their chapter 7 case to avoid two judicial liens on the Property, alleging that its value was less than the total of the mortgages on the Property (including the Mortgage). The bankruptcy court reopened the case, avoided the two judgment liens, and closed the case again in January 2006.

GMAC transferred its interest in the Mortgage to RoundPoint Mortgaging Service Corporation ("RoundPoint") after the chapter 7 case closed. More than ten years after Isaacses' first bankruptcy filing, RoundPoint filed a foreclosure proceeding in April 2014 against the Isaacses in the Lyon County (Kentucky) Circuit Court and, by default, obtained a Judgment and Order of Sale, and then an Amended Judgment and Order of Sale, in August 2014 (the "Judgment"). The Judgment recites that the state court "finds that plaintiff's promissory note is secured by a certain mortgage of which the plaintiff is the holder, which mortgage constitutes a valid second mortgage upon the real estate owned by the defendants . . . ." (Stipulation of Facts, Exhibit I at 2, ECF No. 68-11.)

No party appealed the Judgment. Instead, in September 2014, immediately prior to the scheduled sale date, Isaacs (without her husband) filed a chapter 13 petition. Isaacs' chapter 13 plan filed with her petition states that the lien at issue "shall be avoided pursuant to 11 U.S.C. § 522(f), or other applicable sections of the Bankruptcy Code," but does not specify whether she or the chapter 13 Trustee would pursue the lien avoidance. (Chapter 13 Plan at 3, Case No. 14-50679, ECF No. 2.) In early October 2014, Isaacs filed a complaint to initiate this adversary proceeding and requested relief under § 544(a)(1) and (a)(3), alleging that she had "derivative standing" to pursue the claims. (Compl. to Avoid Unperfected Mortgage Lien Pursuant to 11 U.S.C. § § 544(a)(1) and (a)(3) ("Complaint") at 3, ECF No. 1.)[3]

On cross-motions for summary judgment, the bankruptcy court found that GMAC was an unsecured creditor in the first chapter 7 case. Construing the Mortgage, the bankruptcy court concluded that certain language in that instrument provided that the mortgagee's lien would not

---

[3]Isaacs originally named RoundPoint (as the successor-in-interest to GMAC on the Mortgage) and Wingspan Portfolio Advisors, LLC (as RoundPoint's assignee and loan servicer) as the defendants in the adversary proceeding. After both defendants filed answers to the Complaint, the bankruptcy court entered an agreed order dismissing RoundPoint, and granted the Mortgagee's motion to be substituted as "the proper party-Defendant in this cause of action" in place of Wingspan. (ECF Nos. 27, 48.)

be effective until the Mortgage was recorded. As a result, the court found that GMAC did not obtain a security interest in the Property before the Isaacses filed their chapter 7 petition as GMAC did not record its mortgage by then. The bankruptcy court therefore agreed with Isaacs that the chapter 7 discharge order discharged the Mortgagee's debt related to the Mortgage, and stated: "[t]he fact that [the Mortgagee's predecessor-in-interest] was able to obtain the Circuit Court default judgment against Isaacs has no bearing on the validity of the discharge order." (Mem.-Op. at 15–16, ECF No. 77).

In sum, the bankruptcy court held:

> [T]he debt in question was unsecured by virtue of GMAC's failure to record the Second Mortgage prior to [Isaacs]'s petition and [] it was discharged at the time [Isaacs] concluded her 2004 Chapter 7 case. The Circuit Court judgment served as an improper modification of this Court's discharge order, and, as a result, the *Rooker-Feldman* doctrine does not apply. This Court, therefore, grants summary judgment in favor of [Isaacs] and finds the Circuit Court judgment void *ab initio* as it relates to the debt in question.

(*Id.* at 2.)

## DISCUSSION

### A. Standing

The parties devoted significant attention in their briefs and at oral argument to the Mortgagee's position that Isaacs lacked derivative standing to pursue claims against the Mortgagee under § 544(a)(1) and (a)(3) without receiving the chapter 13's Trustee's prior approval. "Generally, standing determinations require a two-tiered analysis." *Official Comm. of Unsecured Creditors of Grand Eagle Cos. v. Asea Brown Boveri, Inc.* (*In re Grand Eagle Cos.*), 310 B.R. 79, 83–84 n.3 (Bankr. N.D. Ohio 2004) (citing *Official Comm. of Unsecured Creditors of America's Hobby Ctr. v. Hudson United Bank* (*In re America's Hobby Ctr.*), 223 B.R. 275, 279 (Bankr. S.D.N.Y. 1998)). "'The court must first determine whether the plaintiff has standing under the Constitution and then under certain judicially-engrafted prudential principles, including whether the plaintiff's claims fall within the zone of interests to be protected or regulated by the statute in question.'" *Id.* (quoting *In re America's Hobby Ctr.*, 223 B.R. at 279)).

Statutory standing is not jurisdictional; as the Supreme Court has explained, "'the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case.'" *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4 (2014) (internal quotation marks and citations omitted). In a slightly different context, a bankruptcy court explained: "[d]erivative standing, unlike Article III standing, is not truly a jurisdictional concept, but rather a merits question concerning the circumstances under which the Code permits a creditor to file an adversary proceeding on behalf of a debtor in bankruptcy." *Spradlin v. Williams* (*In re Alma Energy, LLC*), No. 09-7005, 2014 Bankr. LEXIS 4463, at *28 (Bankr. E.D. Ky. Oct. 21, 2014) (citations omitted).

The Mortgagee does not contest Isaacs' constitutional standing to proceed with the claims in her Complaint; rather, the Mortgagee challenges Isaacs' statutory standing to pursue claims under § 544(a)(1) and (a)(3). As a result, the Panel must address the Mortgagee's challenge to the bankruptcy court's subject matter jurisdiction over the adversary proceeding based on the *Rooker-Feldman* doctrine before considering the Mortgagee's objection to Isaacs' claim of derivative standing.

**B. Jurisdiction under the *Rooker-Feldman* Doctrine and Its Exception**

"[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review'. . . ." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S. Ct. 1326, 1331 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S. Ct. 162, 165 (1934)). When a court lacks jurisdiction, the appellate court has "jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *United States v. Corrick*, 298 U.S. 435, 440, 56 S. Ct. 829, 832 (1936). This Panel is in the circumstance contemplated in *Corrick*.

The *Rooker-Feldman* doctrine derives from two opinions issued by the Supreme Court of the United States, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983). The doctrine bars lower federal courts from exercising appellate jurisdiction over final state-court judgments.

*McCormick v. Braverman*, 451 F.3d 382, 391–92 (6th Cir. 2006). The doctrine prohibits "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1522–23 (2005).

The Sixth Circuit Court of Appeals has explained that "what the *Rooker-Feldman* doctrine primarily bars are claims that seek 'relief from injury "caused by" the state court judgment.'" *Hamilton v. Herr* (*In re Hamilton*), 540 F.3d 367, 372 (6th Cir. 2008) (quoting 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4469.1 at 11 (2d ed. Supp. 2008)). "[T]he [*Rooker-Feldman*] doctrine is confined to those cases . . . when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law." *McCormick*, 451 F.3d at 395. As the Seventh Circuit Court of Appeals has stated:

> The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*GASH Assocs. v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993).

It may appear fairly clear; however, the *Rooker-Feldman* doctrine frequently raises thorny issues concerning the extent of federal and state court jurisdiction over particular matters and comity between the federal and state courts. A particularly thorny issue arises from the discharge provided by § 524(a) to bankruptcy debtors. The relationship between the discharge and subsequent state court proceedings has been litigated frequently. These difficult issues are described in *The Bankruptcy Hegemon: Section 524(a) and Its Effect on State and Federal*

*Comity*.[4] That article aptly analyzes the differing approaches taken by the Ninth, Eighth, Sixth, and Second Circuits in this area.[5]

The relief demanded in the Complaint establishes that Isaacs asked the bankruptcy court to serve in an appellate capacity over the state court's Judgment:

> [Isaacs] prays that this Honorable Court enter an Order declaring the second mortgage held by [Creditor] . . . to be avoided pursuant to 11 U.S.C. §§544(a)(1) and (a)(3) and no longer a claim against the real estate property referenced therein.

> [Isaacs] prays that this Court order that the Amended Judgment and Order of Sale entered August 22, 2014 by the Lyon County Circuit Court be vacated because it was barred by the statute of limitations.[6]

> [Isaacs] further prays that the Order foreclosing the second mortgage entered by the Lyon County Circuit Court . . . to be an unenforceable order [*sic*] due to the avoidance of the underlying mortgage by this Court.

(Complaint at 4.) The Judgment held that the Mortgage constituted a valid and enforceable lien (i.e., the opposite conclusion sought in the Complaint's first requested remedy); thus, all three of Isaacs' requests for relief from the bankruptcy court impermissibly call for federal appellate review of and relief from the state court's Judgment.

However, the bankruptcy court held that the *Rooker-Feldman* doctrine did not apply based on the Sixth Circuit's decision in *Hamilton*. In *Hamilton*, the Sixth Circuit recognized an exception to the *Rooker-Feldman* doctrine as applied to bankruptcy discharge orders. In that case, the debtor and his wife obtained a loan during their marriage and both signed a promissory note. After their divorce, the debtor's father paid the note and then sued the debtor's ex-wife to

---

[4]Benjamin Margulis, 31 Cardozo L. Rev. 905 (January, 2010).

[5]The author of the article notes that the "Eighth Circuit gives great deference to state courts," *Cf. Ferren v. Searcy Winnelson Co.* (*In re Ferren*), 203 F.3d 559, 560 (8th Cir. 2000), "while the Ninth Circuit grants almost no such deference," citing *Gruntz v. County of Los Angeles* (*In re Gruntz*), 202 F.3d 1074 (9th Cir. 2000). *Id.* at 927. He also concludes that the Sixth Circuit "has quietly shifted from a relatively pro-state stance to a position exemplified by its recent holding in Hamilton [540 F.3d 367 (6th Cir. 2008)], where it adopted the approach pioneered by the Ninth Circuit's Bankruptcy Appellate Panel in the Pavelich decision [229 B.R. 777 (B.A.P. 9th Cir. 1999)]. And the Second Circuit courts are somewhere in the middle, rejecting the Pavelich/Hamilton approach and granting state courts concurrent jurisdiction pursuant to § 1334(b)" [citing *In re Candidus*, 327 B.R. 112 (Bankr. E.D.N.Y. 2005)]. *Id* at 938.

[6]The applicability of a statute of limitations is not an issue on appeal.

recover the sums paid. While the father's lawsuit was pending, the debtor filed a chapter 7 petition and listed his ex-wife as a creditor. The bankruptcy court held that the debt owed to his ex-wife was dischargeable and entered a discharge order.

Months later, the ex-wife filed a third-party complaint against the debtor in the state court lawsuit with the debtor's father, seeking indemnification from the debtor for any liability she had to the debtor's father. The debtor did not raise his discharge as a defense and the state court issued a money judgment against the debtor in his ex-wife's favor. The debtor then filed a complaint in bankruptcy court to enjoin his ex-wife's efforts to collect on her state court judgment. The bankruptcy court dismissed the lawsuit under the *Rooker-Feldman* doctrine, but the district court reversed, concluding that the state-court judgment impermissibly modified the debtor's discharge order. The Sixth Circuit Court of Appeals agreed with the district court, holding that, while state courts have jurisdiction to *construe* a bankruptcy court's discharge order, they do not have jurisdiction to do so incorrectly and thereby *modify* a discharge order. *Hamilton*, 540 F.3d at 375. The state court judgment modified the discharge order because it imposed a money judgment against the debtor even though the discharge order already relieved him of personal liability for that debt. A judgment that modifies a discharge order is void *ab initio*, and the *Rooker-Feldman* doctrine does not bar federal court jurisdiction over a complaint that seeks relief from such a state-court judgment. *Id*. at 369, 376. Accordingly, under *Hamilton*, upon proper motion, bankruptcy courts are charged with determining whether a judgment of a state court has modified the debtor's discharge.

In its opinion in the instant case, the bankruptcy court considered the *Hamilton* exception along with the Mortgage, the chapter 7 discharge order, and the state court's Judgment. The court construed the terms of the Mortgage and found that it never attached to or liened the Property. Since the Mortgage never attached, the underlying debt was unsecured, and was discharged through the chapter 7 discharge order. The bankruptcy court concluded that, in its view, the Judgment impermissibly modified the discharge order by finding the Mortgage valid and—post-discharge—securing a discharged unsecured debt.

The bankruptcy court found that Isaacs' case was fundamentally similar to *Hamilton*—the debtor obtained a discharge of her debt to the Mortgagee and later a state court re-imposed

personal liability upon her by enforcing a mortgage that could have attached only to a discharged debt and therefore was an act to collect on that discharged debt. Thus, the bankruptcy court found that the state court violated and modified Isaacs' discharge because the debt involved was unsecured at the petition date. The Mortgage was ineffective to lien Isaacs' interests in the Property post-petition because the underlying debt had been discharged. The bankruptcy court found that only through the post-discharge foreclosure action did the debt become secured, in violation of § 524(a)(2). Thus, crucial to the bankruptcy court's conclusion that a violation of the discharge injunction had occurred was its determination that the Mortgage did not encumber the Isaacses' interests in the Property at the petition date or when the foreclosure action was commenced.

However, the unusual facts of this case do not lend themselves to a straight-forward application of *Hamilton*. In *Hamilton*, the bankruptcy court discharged the debtor's personal liability for that debt. Then, the state court found the debtor personally liable for that same debt, which acted as a modification of the discharge order. In this case, the chapter 7 discharge relieved the Isaacses' personal liability for the debt in question. However, the foreclosure action only sought in rem relief. The Mortgagee did not pursue judgment against the Isaacses for personal liability on the debt. So, to decide whether the *Hamilton* exception applies at this stage of the analysis, the question this Panel would need to determine is, can an in rem action ever violate § 524(a) or serve to modify a discharge order? The parties did not argue that issue in either their briefs or oral argument.

The majority is satisfied that rarely would an in rem action serve to modify a discharge injunction.[7] However, we need not determine that an in rem action could never modify the discharge,[8] because we are satisfied that the Judgment does not.[9]

---

[7]As previously noted, the facts in this case were unusual, pitting the Isaacses' discharge against the later foreclosure proceeding on the Mortgage which was recorded during the pendency of the chapter 7 case and which the bankruptcy court found only became effective against the Isaacses's interest at recordation.

[8]There is authority from which one can conclude that post-discharge in rem conduct may violate § 524(a) and the debtor's discharge. *See Jarrett v. Ohio* (*In re Jarrett*), 293 B.R. 127, 133 (Bankr. N.D. Ohio 2002) (discharge violated if creditor post-discharge renews its prepetition lien as to property acquired post-discharge); *In re Emelity*, 251 B.R. 151 (Bankr. S.D. Cal. 2000) (post-discharge community property divorce settlement, which debtor listed in his bankruptcy schedules after parties filed for divorce but prior to the division of community

If the Mortgage became effective as to the Isaacses prior to the chapter 7 petition date, the state court had jurisdiction to determine its validity since neither the discharge order nor the automatic stay would be implicated because, absent avoidance by the bankruptcy court, a valid lien survives and rides through bankruptcy. *Dewsnup v. Timm*, 502 U.S. 410, 417–18, 112 S. Ct. 773, 778(1992); *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150, 2154 (1991). However, both the automatic stay and the discharge order could have been implicated if the Mortgage did not become effective as a lien against the Isaacses' interests in the Property until after the chapter 7 petition date. Therefore, the date the Mortgage became effective as a lien against the Isaacses' interests in the Property is of vital importance to whether the *Hamilton* exception to the *Rooker-Feldman* doctrine applies in this case.

Under the Code, a security interest in property and the underlying debt it secures are not the same. A chapter 7 discharge order "discharges the debtor from all *debts* that arose before the date of the order for relief under this chapter. . . ." 11 U.S.C. § 727(b) (emphasis added). Such a discharge "operates as an injunction against . . . an act, to collect, recover or offset any such debt *as a personal liability of the debtor,* whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2) (emphasis added). As the Supreme Court has explained, "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Home*

---

property, was a pre-petition debt discharged in the chapter 7 bankruptcy and spouse's resulting lien set aside as being in violation of discharge injunction.); and *In re Breul*, 533 B.R. 782 (Bankr. C.D. Cal. 2015) (defendant violated discharge injunction by recording lien against debtor's property after filing of bankruptcy and by lien's continued existence after discharge). In addition, bankruptcy courts have issued orders voiding certificates of judgment filed against debtors who do not own real property at the time that their bankruptcy is filed to preclude the judgment lien creditor from later enforcing that certificate of judgment against the debtor's after-acquired real property. The premise upon which such orders are entered is to protect the debtor's fresh start and discharge under § 524(a). *See In re Novell*, 198 B.R. 697 (Bankr. W.D. Ky. 1996); and *In re Blakely*, Case No. 13-50069, 2013 Bankr. LEXIS 5474 (Bankr. E.D. Ky. Mar. 27, 2013).

[9]This is the primary difference between the majority and the concurrence. The concurrence reasons that an in rem proceeding could never impair or modify a debtor's discharge because a discharge only affects the personal liability of a debtor and, therefore, the *Rooker-Feldman* doctrine would always bar a bankruptcy court's review of a state court foreclosure or other in rem judgment. But the Panel does not need to reach that issue because the bankruptcy court erroneously concluded that the Mortgage was invalid. Because the Mortgage was a valid prepetition unavoided lien on the Property, it passed through the bankruptcy unaffected by the discharge. Therefore, the foreclosure judgment could not have violated the discharge order and the *Hamilton* exception does not apply. In short, the foreclosure judgment was a proper exercise of the state court's authority in an in rem proceeding and further review of that judgment is barred by *Rooker-Feldman*.

*State Bank*, 501 U.S. at 84. In other words, while § 524(a)(2) precludes the assessment of personal liability against a debtor for a discharged debt, a chapter 7 discharge, by itself, does not avoid prepetition security interests or liens.

The distinction between personal liability and in rem liability is crucial with regard to the scope and effect of a discharge order:

> Although the Supreme Court has used the word "extinguish" in discussing the effect of a discharge, a careful reading confirms that what a discharge extinguishes is not the creditor's *claim*, but the Debtor's "personal liability" on the claim—the Code's definition of a "debt." *See* 11 U.S.C. § 101(12) (defining "debt" as "liability on a claim"). The words "claim" and "debt" may be "co-extensive," *Johnson*, 501 U.S. at 184, but neither the high court (in *Johnson*) nor the Code (in the various discharge provisions) speaks in terms of discharging "claims," only "debtors" and "debts." In other words, the claim may survive the discharge to some extent, but the debt —the "liability on a claim"— does not.

*In re Livensparger*, Case No. 12-10361, 2015 Bankr. LEXIS 1427, at *9 (Bankr. W.D. Mich. Apr. 17, 2015). Therefore, a discharge accomplishes two things: "[i]t voids judgments and it enjoins collection of claims as a personal obligation of the debtor." *Id.* at *10. Post-discharge in rem actions enforcing valid liens against the debtor's property do not violate the discharge injunction. *In re Black*, Case No. 09-78266, 2014 Bankr. LEXIS 682, at *7 (Bankr. E.D. Mich. Feb. 14, 2014).

In sum, if the lien evidenced by the Mortgage was effective against the Isaacses prior to the chapter 7 petition date, and was not avoided in the course of that bankruptcy case, then the Mortgage would still exist as an in rem obligation of the Isaacses even after the discharge order relieved them of their personal liability on the underlying indebtedness. Since no personal liability would be implicated, no modification of the discharge order would be implicated through enforcement of that lien, and the *Hamilton* exception to the *Rooker-Feldman* doctrine would not apply.

### C. The Mortgage Was Binding as to the Isaacses at the Time of the Filing of the Chapter 7 Bankruptcy Case

To determine whether the Mortgage was binding as to the Isaacses as of the chapter 7 petition date, we turn to the Mortgage and Kentucky law applicable to mortgages. The

bankruptcy court's conclusion that the Mortgage "must be construed" to provide that "attachment" of the mortgage lien to the Property was only to occur at the time of recording contradicts the Mortgage and Kentucky mortgage law. While it is true that the lien did not become effective as to third parties until the recording of the Mortgage, that conclusion is not supportable as to the Isaacses' interests.

The bankruptcy court concluded, based on the language in the "Priority of Advances" section, that "it must be construed that at the time of execution, the parties did not intend immediate attachment but intended attachment to occur at the time the [] Mortgage was recorded." (Mem.-Op. at 7, ECF No. 77.) As a result, the bankruptcy court held, the Judgment revived and secured a discharged debt, as opposed to merely enforcing existing valid in rem rights.

Contrary to the bankruptcy court's conclusion, the Mortgage expressed the intent that it was binding as to the Isaacses as of the time they signed the Mortgage. A mortgage is a contract between a mortgagor (borrower) and a mortgagee (lender) and is subject to normal rules of contract interpretation. *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000). "'Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to de novo review.'" *3D Enters. Contr. Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002)) "However, once a court determines that a contract is ambiguous, areas of dispute concerning the extrinsic evidence are factual issues and construction of the contract become[s] subject to resolution by the fact-finder." *Cantrell*, 94 S.W.3d at 384.

The review of a contract "must begin with an examination of the plain language of the instrument." *Kentucky Shakespeare Fest., Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention. The intention of the parties is to be ascertained from the words employed taking into consideration the whole context of the agreement." *Jones v. Riddell*, 5 S.W.2d 1077, 1078 (Ky. 1928). "Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d

916, 919 (Ky. 1986). "Words are best known by the company they keep—by the context in which they appear . . . ." *Howard v. Mercer Transp. Co.*, 566 F. App'x 459, 461 (6th Cir. 2014) (citing *Riddell*, 5 S.W.2d at 1078).

Upon review of the plain language of the entire agreement, the Panel must determine whether the Mortgage is ambiguous. "When no ambiguity exists in the contract, we look only as far as the four corners of the document to determine the parties' intentions." *3D Enter. Contr. Corp.*, 174 S.W.3d at 448. "'A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations.'" *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (quoting *Cantrell Supply,* 94 S.W.3d at 385). "While nothing can be added to or taken from a written contract by parol evidence, it is the rule that ambiguities may be explained by parol evidence." *Stubblefield v. Farmer*, 165 S.W.2d 556, 557 (Ky. 1942).

The Mortgage contains two provisions pertaining to the date on which the mortgage lien, securing a line of credit, would be effective. The "Description of Security" section suggests that the Mortgage is effective on signing: "By signing this Mortgage, we hereby mortgage, grant and convey . . . subject to the terms of this Mortgage . . . the 'Property'." (Mortgage at 1, ECF No. 68-3.) The Mortgage's "Priority of Advances" section, however, states: "[t]he lien of this Mortgage will attach on the date this Mortgage is recorded." (*Id.* at 2.)[10] When viewed in isolation, these two terms of the Mortgage seemingly conflict regarding the parties' intent with respect to the date on which the mortgage lien would be effective. The "Description of Security" section suggests that the Mortgage is effective on signing "subject to the terms of this Mortgage." (*Id.* at 1.)[11] But the "Priority of Advances" section states: "[t]he lien of this Mortgage will attach on the date this Mortgage is recorded." (*Id.* at 2.) The phrase "subject to the terms of this Mortgage" may not harmonize these conflicting terms if the Mortgage never would be effective on signing if effectiveness of the lien of the Mortgage as to the Isaacses depended on recordation.

---

[10]The Mortgage states "[t]he headings in the Mortgage are not to be used to interpret or define its provisions." (Mortgage at 7.) Although this analysis refers to the titles of the different sections, they are used as sign-posts only.

[11]"By signing this Mortgage, we hereby mortgage, grant and convey . . . subject to the terms of this Mortgage . . . the 'Property'." (Mortgage at 1.)

Analyzing those two provisions of the Mortgage within the context of the entire instrument and under Kentucky law, the majority concludes that the Mortgage was effective to lien the Isaacses' interests in the Property as of the signing of the Mortgage by the Isaacses. While the bankruptcy court understandably gave "[s]pecific terms . . . greater weight than general language" in citing the language in the Mortgage's "Priority of Advances" section, (Mem.-Op. at 6), specificity is but one consideration when resolving ambiguity. Context is another. Creating a security interest in real property implicates the relationship between borrower and lender. Establishing the priority of a security interest in real property concerns the rank of one creditor's security interest among multiple creditors with a lien on the same property, and not the relationship between borrower and lender. It is logical that the earlier provision describing the creation of the security interest expressed the intention that the Mortgage was effective as to the Isaacses upon signing. It is also logical that the later provision contained in the "Priority of Advances" section of the Mortgage devoted to the relationship among the Isaacses' creditors expressed the intention that the lien of the Mortgage became effective as to third party creditors upon recordation.

The rest of the language in the Mortgage's "Priority of Advances" section also fits with this construction of the Mortgage. The first line of the "Priority of Advances" section states "[t]his is a Line of Credit Mortgage." (Mortgage at 2.) A Kentucky statute provides the default rules pertaining to the priority of the lien for a line of credit mortgage, and describes the defining characteristic for such an instrument: "the lien of the mortgage . . . shall be superior to any liens . . . created or arising after recordation of the mortgage" even if the lender advances funds with "notice of a subsequently created lien." Ky. Rev. Stat. § 382.385(3). In addition, the last sentence of the Mortgage's "Priority of Advances" section states that the lien created would not be extinguished even if no money has been advanced "as of the date of this Mortgage." (Mortgage at 2.) Being a line of credit mortgage, the Mortgage anticipated the advancement of funds to the Isaacses, with the Mortgage being effective as to third parties acquiring liens against the property upon recordation, even if no funds were advanced as of the time of the signing of the Mortgage and even as to funds advanced subsequent to the perfection of the later liens. It would be anomalous and enigmatic, if, after negotiating with the Isaacses to obtain a mortgage to secure the line of credit, the Mortgagee advanced funds under its line of credit before the Mortgage was

recorded knowing that it didn't have a lien to secure the advances. Thus, the language within the "Priority of Advances" section of the Mortgage controls the perfection of the Mortgage lien as to third-party lienors, while the language within the "Description of Security" section of the Mortgage establishes the effectiveness of the lien of the Mortgage as to the Isaacses.

In addition, consistent with the terms of the Mortgage, Kentucky law governing mortgages establishes that the Mortgage was binding as to the Isaacses as of the time that they signed it. In holding that the Mortgage did not attach as to the Isaacses' interests before the chapter 7 bankruptcy petition was filed, the bankruptcy court did not acknowledge that the Mortgage satisfies the requirements under Kentucky law for the creation of a mortgage lien as between the mortgagors, the Isaacses, and the Mortgagee's predecessor:

> The statute of frauds requires that a mortgage "be in writing and signed by the party to be charged therewith, or by his [or her] authorized agent." KRS 371.010; *Roberts' Trustee v. Terry*, 161 Ky. 397, 170 S.W. 965 (Ky.1914). The Borrower must be identified in the document as the borrower/mortgagor to be legally bound, (*Goodrum's Guardian v. Kelsey*, 224 Ky. 349, 50 S.W.2d 932 (Ky. 1932)) and the amount of the debt must be recited or sufficient information given to permit further inquiry by interested parties. *See Peoples Bank v. Morgan County Nat'l Bank*, 266 Ky. 308, 98 S.W.2d 936 (Ky. 1936). The mortgage must be delivered and accepted. *Ward v. Small's Adm'r.*, 90 Ky. 198, 13 S.W. 1070 (Ky. 1890). The parties must also have the intent to create a lien against the property in favor of the Lender as security for the Borrower's debt. The property to be mortgaged must be described, with sufficient definiteness to allow an interested party to locate the land secured by the mortgage. *See*, *e.g.*, *Louisville Joint Stock Land Bank v. McNeely*, 267 Ky. 425, 102 S.W.2d 389 (Ky. 1937).

2 *Kentucky Real Estate Law and Practice* § 12.22 (UK/CLE, 4th ed. 2013) (alteration in original); *see also* 3A *Kentucky Practice Series, Real Estate Transactions* § 22:28 (April 2016 update) ("The minimum requirements of form in Kentucky for a mortgage to be considered valid, it must: 1. state the amount of the indebtedness; 2. be in writing; 3. be executed by the mortgagors and delivered to the mortgagee; and 4. value must be given (i.e., the loan made). At this point, a mortgage will be considered valid between the parties to the instrument." (citations omitted)). A review of the Mortgage reflects that these requirements are satisfied.

Under Kentucky law, an unrecorded mortgage is valid between the parties to the Mortgage. *Johnson v. Williams* (*In re Williams*), 490 B.R. 236, 239 (Bankr. W.D. Ky. 2013)

(citing *Armstrong & Taylor v. Reynolds*, 1874 W.L. 6773 (Ky. 1874); and *Eastern Const. Co. v. Carson Const. Co.'s Trustee*, 47 S.W.2d 69–70 (Ky. 1932). Thus, a lapse in recording of a mortgage impacts the priority of claims against the property, but does not void the lien between the mortgagor and the mortgagee. *Williams*, 490 B.R. at 249 (citing *E.S. Bonnie & Co. v. Perry's Trustee,* 78 S.W. 208 (Ky. 1904)). Accordingly, consistent with the terms of the Mortgage, Kentucky law establishes that the Mortgage was binding between the Isaacses and the Mortgagee at the time that it was signed.

**D. Because the Mortgage was a Valid, Prepetition Lien As of the Time of the Chapter 7 Filing, the Mortgagee's Later Pursuit of the Foreclosure Solely on an In Rem Basis Did Not Violate or Modify Isaacs' Chapter 7 Discharge and *Rooker- Feldman* Precludes the Bankruptcy Court's Exercise of Jurisdiction Over the Foreclosure Proceeding**

For the reasons stated, we disagree with the bankruptcy court's interpretation of the Mortgage denying effectiveness of the lien of the Mortgage as to the Isaacses until recordation. The Mortgage is not ambiguous, and provides that the parties to the Mortgage created a mortgage lien as of the date they executed the instrument.[12] Because the instrument was executed before the chapter 7 petition date, the lien was valid before, during, and after the pendency of the chapter 7 bankruptcy case as to the Isaacses. Because the state court Judgment only foreclosed on a valid, pre-petition lien, there was no modification of the discharge order and the *Hamilton* exception does not apply and the *Rooker-Feldman* doctrine bars the bankruptcy court from any further jurisdiction to review the state court Judgment.

Finally, we wish to allay concerns raised by the concurring opinion. The concurrence would reverse the bankruptcy court solely on the basis that the judgment arose out of an in rem action and is concerned that the majority's analysis will open the floodgates to bankruptcy

---

[12]Even if the Panel found the Mortgage to be ambiguous, the undisputed facts in the record outside the Mortgage's four corners establish that the parties intended the Mortgage to bind the parties as of the time of its execution. To that end, a year after signing the Mortgage, the Isaacses listed the line of credit as a secured debt in the chapter 7 case. They reopened their chapter 7 case to strip judgment liens owing in part to the Mortgage. In addition, Isaacs stipulated in this adversary proceeding that "[t]he agreement, or note, was secured by a second mortgage to GMAC . . . encumbering the [P]roperty . . . ." (Stipulation of Facts at 1, ECF No. 68.) And, in her brief to this Panel, Isaacs advised that she did not know of the argument that the Mortgage was not binding until it was recorded until after she filed this adversary proceeding—over eleven years after signing the Mortgage. These undisputed facts and representations confirm that Isaacs intended to create a mortgage lien when she signed the Mortgage.

courts' review of state court foreclosure and other in rem judgments. Respectfully, as explained below, these concerns are unwarranted. Moreover, *Rooker-Feldman* cannot be applied in the discharge context solely on the basis of the nature of the state court proceeding.

First, for the reasons explained, it is not necessary to decide whether an in rem proceeding could ever violate § 524(a) and the debtor's discharge. However, without deciding that issue, there is authority which supports the conclusion that under very limited circumstances, an in rem proceeding could violate the debtor's discharge by affecting the debtor's discharged personal liability. Thus, it is not appropriate to decide that substantive issue in order to limit our review solely to the nature of the state court proceeding.

Second, there will be no floodwaters because the majority's analysis was only required by the unusual facts of this case. This decision will not result in the nullification of the *Rooker-Feldman* doctrine. The doctrine is applicable under many other circumstances in bankruptcy besides the discharge, such as dischargeability proceedings. This decision has very little impact on foreclosure proceedings. In the typical real estate foreclosure, either the state court judgment has been rendered pre-petition and *Rooker-Feldman* will apply, or the secured creditor will seek relief from the bankruptcy court to pursue the foreclosure. Rarely will there be a situation such as this in which the mortgage is recorded after a bankruptcy is filed, the mortgage is not avoided by the bankruptcy trustee during the case, and a foreclosure is filed on that mortgage subsequent to the closing of the first bankruptcy case with a second bankruptcy case filed to attack the intervening foreclosure judgment.

Third, the majority's analysis is consistent with *Hamilton,* which requires the Panel to decide whether the bankruptcy court was correct to determine whether the foreclosure judgment impaired Isaacs' discharge. *Hamilton* concluded that a state court can construe the extent of a debtor's discharge only if the state court is correct, which at times will necessitate a bankruptcy court to review a state court judgment.

In sum, while we agree that *Rooker-Feldman* precluded the bankruptcy court's avoidance of the foreclosure judgment, we do so on the more narrow basis that the bankruptcy court erred in finding the Mortgage unenforceable under Kentucky law.

**CONCLUSION**

For the foregoing reasons, the Panel VACATES the bankruptcy court's judgment and REMANDS this case with instructions to DISMISS the adversary proceeding for lack of subject matter jurisdiction to hear the claims asserted in Isaacs' Complaint.

---

**CONCURRENCE**

---

TRACEY N. WISE, Bankruptcy Appellate Panel Judge, concurring in the judgment.

The *Rooker-Feldman* doctrine precluded the bankruptcy court from reviewing the merits of the state court's in rem judgment. This conclusion ends the analysis. As a result, I write separately to concur with the majority's result, but to respectfully disagree with its reasoning and the scope of its opinion.

Without subject matter jurisdiction, the majority engages in a merits analysis much like the bankruptcy court's analysis to which it assigned error. Reasoning that "the unusual facts of this case do not lend themselves to a straight-forward application of" *Hamilton v. Herr* (*In re Hamilton*), 540 F.3d 367 (6th Cir. 2008) (*see supra* p. 11), the majority misconstrues the discharge injunction and the inquiry authorized by *Hamilton*. Bearing in mind *Hamilton's* admonition that state courts may construe the discharge injunction if they do it properly, *Hamilton's* application to these "unusual facts" must begin with a review of what the discharge enjoins.

In *Hamilton*, there was no dispute that the debt at issue was unsecured and that the creditor obtained a judgment of personal liability against the debtor for a pre-petition debt covered by his discharge order in violation of 11 U.S.C. § 524(a). But, as the majority recognizes in passing, "there are only two things that a discharge actually does: it voids judgments and it enjoins collection of claims as a personal obligation of the debtor." *In re Livensparger*, Case No. 12-10361, 2015 Bankr. LEXIS 1427, at *10 (Bankr. W.D. Mich. Apr. 17, 2015). "Actions against a debtor *in rem* do not violate the discharge injunction." *In re Black*, Case No. 09-78266, 2014 Bankr. LEXIS 682, at *7 (Bankr. E.D. Mich. Feb. 14, 2014).

The Judgment in the instant matter did not seek to impose personal liability against Debtor Linda Isaacs for a discharged debt. Rather, the state court lawsuit sought to foreclose on a mortgage lien on Debtor's property, and a discharge under § 524 does not affect an in rem judgment against a debtor's property related to a pre-petition lien. *Johnson v. Home State Bank*,

501 U.S. 78, 83 (1991) ("[T]he Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy. *See* 11 U.S.C. § 522(c)(2)."); *cf.* 4 *Collier on Bankruptcy* ¶ 524.02[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) ("[A] creditor may enforce a prepetition judgment lien after the discharge, if the automatic stay is no longer in effect and the lien has not been avoided, paid, or modified so as to preclude enforcement.").

The bankruptcy court held that the chapter 7 discharge order discharged the mortgage debt at issue. It then made another determination regarding the attendant mortgage lien based on this statement in the subject mortgage: "The lien of this Mortgage will attach on the date this Mortgage is recorded." (Mem-Op. at 4–7, ECF No. 77.) Relying on this language, the court concluded:

> [T]he debt in question was unsecured by virtue of GMAC's failure to record the Second Mortgage prior to Debtor's petition and [ ] it was discharged at the time Debtor concluded her 2004 Chapter 7 case. The Circuit Court judgment served as an improper modification of this Court's discharge order, and, as a result, the *Rooker–Feldman* doctrine does not apply. This Court, therefore, grants summary judgment in favor of Debtor and finds the Circuit Court judgment void *ab initio* as it relates to the debt in question.

(*Id.* at 2.) In reaching its conclusion, however, the bankruptcy court did not distinguish between personal liability and an in rem action.

The majority takes issue with the bankruptcy court's conclusion regarding the validity of the unavoided lien and finding of a discharge violation. To that end, the majority focuses attention on matters outside its subject matter jurisdiction. The state court here, unlike the state court in *Hamilton*, did not assess personal liability against Debtor in violation of the discharge injunction—it merely addressed the validity of a lien, a state law determination made in all in rem foreclosure actions. The majority's reasoning suggests the bankruptcy courts can serve as an appellate court over every foreclosure action under the rationale that an otherwise permissible in rem action may violate the discharge injunction if the lien is deemed invalid. Under this reasoning, the *Hamilton* exception swallows the *Rooker-Feldman* rule.

Finally, while the procedural posture of the underlying action is unusual, what is not unusual is that a creditor violated the automatic stay. The bankruptcy code provides remedies for

such violations. *See* 11 U.S.C. § 362(k). A debtor in this circumstance may pursue the available remedy for a violation of the automatic stay, but may not seek federal appellate review of a state court's in rem judgment.[1]

I concur with the majority's ultimate holding that the bankruptcy court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine. But I respectfully disagree that the *Hamilton* exception authorized either the bankruptcy court or the majority to engage in a contract interpretation analysis where the state court action adjudicated only in rem relief and not personal liability against Debtor for a discharged debt.

---

[1]Nor am I persuaded by the law or reasoning proffered by the majority to support the proposition that "post-discharge in rem conduct may violate Code § 524(a) and the debtor's discharge." (*See supra* p. 11 n.8.) First, a creditor's action cannot be deemed in rem when the debtor owns no real property. *See Jarrett v. Ohio* (*In re Jarrett*), 293 B.R. 127 (Bankr. N.D. Ohio 2002); *In re Novell*, 198 B.R. 697 (Bankr. W.D. Ky. 1996); *In re Blakely*, Case No. 13-50069 2013 Bankr. LEXIS 5474 (Bankr. E.D. Ky. Mar. 27, 2013)*. Emelity* addressed a lien awarded post-petition in a domestic dispute. *In re Emelity*, 251 B.R. 151 (Bankr. S.D. Cal. 2000). None of these cases apply to a consensual prepetition mortgage on real property and a post-petition action to enforce that mortgage. Finally, *Breul* was procedurally a stay violation action—the precise remedy available to Mrs. Isaacs. *In re Breul*, 533 B.R. 782 (Bankr. C.D. Cal. 2015). The bankruptcy court did not "determine whether the foreclosure judgment impaired Isaacs' discharge" as the majority contends (see supra p. 19); rather, it revisited the state court's determination of the Mortgage's validity.

Simply stated, a bankruptcy court does not have subject matter jurisdiction to revisit a state court's in rem judgment concerning a lien's validity under the auspices of a *Hamilton* exception. A bankruptcy court, however, may entertain an avoidance action or a stay violation action in such circumstances.