*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0320p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re:  JAMES STEWART HAMILTON, d/b/a H & H
Auto Sales,

                                                    *Debtor.*

———————————————————

JAMES STEWART HAMILTON,

                                    *Plaintiff-Appellee,*

        *v.*

ALICIA HAMILTON HERR,  THOMAS W. GOODMAN,
JR. and  LAWRENCE R. WEBSTER,

                                    *Defendants-Appellants.*

No. 07-6269

———————————

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 06-00052—Gregory F. Van Tatenhove, District Judge.

Argued:  July 23, 2008

Decided and Filed:  August 26, 2008

Before:  MOORE and GRIFFIN, Circuit Judges; SARGUS, District Judge.[*]

———————————

## COUNSEL

**ARGUED:**  Lawrence R. Webster, LAWRENCE R. WEBSTER LAW OFFICE, Pikeville,
Kentucky, for Appellants.  John T. Hamilton, GESS, MATTINGLY & ATCHISON, Lexington,
Kentucky, for Appellee.  **ON BRIEF:**  Lawrence R. Webster, LAWRENCE R. WEBSTER LAW
OFFICE, Pikeville, Kentucky, for Appellants.  John T. Hamilton, Huston Barrow Combs, GESS,
MATTINGLY & ATCHISON, Lexington, Kentucky, for Appellee.

———————————

## OPINION

———————————

—————————————

   [*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting
by designation.

1

KAREN NELSON MOORE, Circuit Judge.  This case requires us to determine whether 11 U.S.C. § 524(a) makes a state-court judgment void ab initio when entered against a debtor whose dischargeable debts had been discharged, or whether the *Rooker-Feldman* doctrine compels federal courts to respect the state-court judgment.  We conclude that § 524(a) prevails and state court judgments that modify a discharge order are void ab initio.

Defendant-Appellant Alicia Hamilton Herr ("Herr") appeals a district-court order reversing the bankruptcy court's dismissal of Plaintiff-Appellee James Stewart Hamilton's (the "Debtor's") complaint seeking to enjoin Herr from enforcing a Kentucky judgment lien against the Debtor. Specifically, the Debtor argued that the bankruptcy court's 1998 discharge order precluded the Pike Circuit Court of Kentucky from holding that the Debtor must indemnify Herr for payments made on a promissory note that Herr and the Debtor jointly obtained in 1990.  The bankruptcy court concluded that the *Rooker-Feldman* doctrine barred the bankruptcy court from enjoining the Pike Circuit Court's judgment, and the district court reversed.  For the reasons discussed below, we **VACATE** the district court's judgment and **REMAND** to the district court so that court may remand to the bankruptcy court for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

The focus of this case concerns the unresolved obligations of Herr and the Debtor in relation to a loan they obtained during their marriage.  On December 11, 1990, Herr and the Debtor signed a promissory note in the principal amount of $14,500 ("the Note") in order to obtain funding for Herr's vending-machine business.  The Debtor and his father, James J. Hamilton ("Hamilton"), secured the Note with a certificate of deposit in the amount of $110,500.03.

On June 16, 1992, the Debtor and Herr's divorce became final.  Their divorce decree did not address the status of the Note.  It appears that the Kentucky divorce court was under the impression that the Debtor had paid off the Note with proceeds from the sale of his Mercedes.  *See* Joint Appendix ("J.A.") at 28 (Divorce Decree ¶ 13) ("That 1984 Mercedes was purchased for $41,000.00 and sold for approximately $25,000.00, those proceeds being used to pay off approximately $14,000.00 in debts owed by the vending company, with the remaining going to the Respondent [i.e., the Debtor here].").  In fact, it appears that the Mercedes-sale proceeds (if any) were not used to pay off the Note; instead, Hamilton paid off the Note himself.

Regardless of what actually happened to the Note, on March 10, 1995, Hamilton sued Herr to recover the money Hamilton allegedly used to pay off the Note.  While Hamilton's suit against Herr was pending, on July 19, 1996, the Debtor filed for relief under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Kentucky.  The Debtor's bankruptcy-court filings did not mention the Note but did list Herr as a creditor in the amount of $44,000.00.  Despite Herr's attempts to get the bankruptcy court to hold that the Debtor's debt to her was non-dischargeable, the bankruptcy court declared the debt dischargeable.

On March 27, 1998, the bankruptcy court discharged all of the Debtor's "dischargeable debts," and stated that:

> *Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor* with respect to any of the following:
>
> > (a)   debts dischargeable under 11 U.S.C. § 523;
> > (b)   unless heretofore or hereafter determined by order of this court to be nondischargeable, debts alleged to be excepted from

> discharge under clauses (2), (4), (6) and (15) of 11 U.S.C.
> § 523(a);
>
> (c)    debts determined by this court to be discharged.

J.A. at 51 (Discharge of Debtor ¶ 2) (emphasis added).  This order enjoined "[a]ll creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by [the paragraph] above . . . from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the above-named debtor." J.A. at 51 (Discharge of Debtor ¶ 3).

On August 18, 1998, in Hamilton's state-court suit against Herr, Herr filed a third-party complaint seeking indemnification from the Debtor on the Note.  In response to the third-party complaint, the Debtor filed a pro se answer that made no reference to his discharge in bankruptcy.  Both Hamilton and Herr moved for summary judgment on their respective complaints.  On November 27, 2001, the state court ordered Herr to pay Hamilton's estate $14,771.74 plus interest and ordered the Debtor to indemnify Herr "for any amounts paid by her to the Estate of James J. Hamilton." J.A. at 73 (Nov. 27, 2001, Judgment at 2).  On May 9, 2003, the Kentucky Court of Appeals affirmed the judgment.  In response to the Debtor's argument that his bankruptcy discharge barred Herr's indemnification claim, the Kentucky Court of Appeals held that discharge in bankruptcy was an affirmative defense that the Debtor had failed to raise.  The Kentucky Court of Appeals went on to say that the Debtor's "failure to affirmatively plead discharge in bankruptcy as a defense amounts to a waiver of the defense." J.A. at 147 (May 9, 2003, Op. at 7).

On January 14, 2005, Herr filed a Motion for Entry of Judgment in Kentucky state court. On March 4, 2005, the state court declared that Herr could not collect indemnification from the Debtor because of the Debtor's bankruptcy discharge.  However, just one month later, the same court reversed itself in a supplemental judgment holding that the Kentucky Court of Appeals's prior decision stipulated the effect of the Debtor's discharge in bankruptcy:  because the Debtor "had not asserted bankruptcy as an affirmative defense[,] that defense is no longer available to him." J.A. at 85-86 (Supp. J. at 1-2).  The state court entered judgment in favor of Herr in the amount of $38,329.70 and interest.

## B.  Procedural Background

On October 3, 2005, the Debtor filed a complaint in the bankruptcy court seeking to "temporarily and permanently enjoin[]" Herr and her attorneys[1] "from taking any further actions to attempt to collect on any judgments or debts allegedly owing from [the Debtor] to the Defendant Herr, and [seeking] . . . all attorney's fees and costs incurred in prosecuting this action." J.A. at 15 (Bankr. Compl. ¶ 42).  In response, Herr asked the district court to apply the *Rooker-Feldman* doctrine and abstain because "the Bankruptcy Court lacks jurisdiction to collaterally attack the [state-court] decision because the only way it could do so would be to, in effect, sit as an appellate court over the state trial court." J.A. at 133 (Mem. in Supp. of Mot. for Abstention at 11).  On February 2, 2006, the bankruptcy court concluded that "[i]t is clear that the injury alleged by the [Debtor] herein resulted from the state court Judgment and thus *Rooker-Feldman* directs that the lower Federal Courts lack jurisdiction," and the bankruptcy court dismissed the Debtor's complaint. J.A. at 180 (Feb. 2, 2006, Bankr. Ct. Mem. Op).  The Debtor appealed to the United States District Court for the Eastern District of Kentucky.  The district court reversed the bankruptcy court's application of the *Rooker-Feldman* doctrine, holding that the state-court judgment was a

---

[1]Herr's attorneys, Thomas W. Goodman, Jr. and Lawrence R. Webster, were defendants in the bankruptcy complaint and are appellants here.  For simplicity's sake, we refer to Herr as the appellant because all three of the appellants appealed together and Webster argued the case for the appellants.

modification of the discharge order, something that 11 U.S.C. § 524(a) barred state courts from doing.  Herr filed a timely notice of appeal.

## II.  ANALYSIS

### A.  Standard of Review

> When reviewing an order of a bankruptcy court on appeal from a decision of a district court, we review the bankruptcy court's order directly and give no deference to the district court's decision.  We review the bankruptcy court's findings of fact under the clearly erroneous standard, asking only whether we are left with a definite and firm conviction that a mistake has been committed.  We review conclusions of law made by the bankruptcy court *de novo*.

*Chase Manhattan Mortgage Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 463 (6th Cir. 2008) (citing *Rogan v. Bank One, Nat'l Ass'n (In re Cook)*, 457 F.3d 561, 565 (6th Cir. 2006)).

### B.  The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine emerged out of two cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  "In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).  In effect, the plaintiffs in *Rooker* and *Feldman* sought to "appeal" their state cases to a federal district court.

After various circuits adopted differing interpretations of the *Rooker-Feldman* doctrine, the Supreme Court recently took the opportunity to clarify the doctrine's limited scope:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.  *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Id.* at 284.  Thus, the *Rooker-Feldman* doctrine does not prohibit all federal cases that are somehow related to a prior state-court decision.  "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"  *Id.* at 293 (alteration and omission in original) (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

This distinction between cases that are covered by the *Rooker-Feldman* doctrine and those that are not, although clarified in *Exxon Mobil*, actually dates back to *Feldman*.  In *Feldman*, at the same time that the Supreme Court stated that the district court lacked jurisdiction for some of the claims, the Court also noted that the district court possessed jurisdiction over the allegations that "involve[d] a general attack on the constitutionality of" bar admittance rules.  *Feldman*, 460 U.S. at 487.  Thus, what the *Rooker-Feldman* doctrine primarily bars are claims that seek "relief from injury 'caused by' the state court judgment."  18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4469.1 at 11 (2d ed. Supp. 2008).  In contrast, the *Rooker-Feldman* doctrine provides no escape from claims that seek relief from other injuries, such as those caused by third parties.  Similarly, the *Rooker-Feldman* doctrine provides no

protection in areas where Congress has explicitly endowed federal courts with jurisdiction. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) (noting that "the *Rooker-Feldman* doctrine merely recognizes" Congress's choice of where to vest original jurisdiction and appellate jurisdiction regarding various matters); *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1078-79 (9th Cir. 2000) (en banc).

## C. The Bankruptcy Court's Jurisdiction

This case requires us to elaborate upon the meaning of 11 U.S.C. § 524(a). That provision states in part that "[a] discharge in a case under this title—. . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, *whether or not discharge of such debt is waived*." 11 U.S.C. § 524(a) (emphasis added). This provision was designed "to effectuate the discharge and make it unnecessary to assert it as an affirmative defense in a subsequent state court action." 4 COLLIER ON BANKRUPTCY ("COLLIER") ¶ 524.LH[1], at 524-57 (Sept. 2005) (Lawrence P. King ed., 15th ed. rev.). The concern of the drafters of § 524 was that a creditor whose debt was discharged would bring suit "in a local court after the granting of the discharge, and if the debtor failed to plead the discharge affirmatively, the defense was deemed waived and an enforceable judgment could then be taken against him or her." *Id.* To avoid such abuses:

> [S]ection 524(a) declares that any judgment on a discharged debt in any forum other than the bankruptcy court is null and void as it affects the personal liability of the debtor. . . .
>
> Accordingly, if a creditor brings a collection suit after discharge, and obtains a judgment against the debtor, the judgment is rendered null and void by section 524(a). The purpose of the provision is to make it absolutely unnecessary for the debtor to do anything at all in the collection action.

*Id.*, at 524-61. And it is for that reason that the Bankruptcy Court of the Northern District of Ohio noted that a debtor need not raise his discharge in bankruptcy as an affirmative defense, because thanks to § 524(a) "such an affirmative defense is unnecessary and has been since 1970." *Braun v. Champion Credit Union (In re Braun)*, 141 B.R. 133, 138 (Bankr. N.D. Ohio 1992).

The case before us would seem to be highly analogous to the situation described in Collier's Treatise. In the instant case, the Debtor received his discharge in bankruptcy and was subsequently brought into a state-court suit wherein the Debtor, appearing pro se, failed to plead his discharge in bankruptcy as an affirmative defense. According to Collier, that would be the exact situation that § 524 was designed to prevent; unfortunately, we cannot rest solely on Collier's interpretation of § 524(a) as Collier's Treatise is not law, and § 524(a) is not the only statute relevant to this question. Of particular importance, courts have interpreted 28 U.S.C. § 1334(b) as granting concurrent jurisdiction to state courts to determine the nondischargeability of debts and have recognized limited authority for state courts to construe a bankruptcy court's discharge order. *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 783-84 (B.A.P. 9th Cir. 1999); *Levy v. Bank of the Orient (In re Levy)*, 87 B.R. 107, 108-09 (Bankr. N.D. Cal. 1988) (noting a tension between 11 U.S.C. § 524(a) and 28 U.S.C. § 1334(b)). In addition, the *Rooker-Feldman* doctrine represents the important goal of preserving the proper respect for state-court decisions. Thus, there exists a tension between 28 U.S.C. § 1334(b) and the *Rooker-Feldman* doctrine's aim to preserve state-court authority, and 11 U.S.C. § 524(a)'s aim to preserve the bankruptcy court's authority.

Collier resolved this tension in favor of the bankruptcy courts and § 524(a). Collier states: "Section 524(a) is meant to operate automatically, with no need for the debtor to assert the discharge to render the judgment void. A bankruptcy court can find that a postpetition state court judgment

is void *despite the full faith and credit normally given to state court judgments*." COLLIER ¶ 4-524.02[1], at 524-14.8 to 524-14.9 (Sept. 2005) (footnotes omitted) (emphasis added).

The Bankruptcy Appellate Panel ("B.A.P.") of the Ninth Circuit resolved this conflict between state-court authority and § 524(a) in *In re Pavelich*, concluding that although state courts have unbridled authority to determine the dischargeability of debts, state courts have the authority to interpret a bankruptcy court's discharge order only to the extent that the state court's interpretation is correct. *In re Pavelich*, 229 B.R. at 783-84. If a state court incorrectly interprets a bankruptcy court's discharge order then the state court is effectively modifying the discharge order, and "they have no authority to vary the terms of the discharge." *Id.* at 783. When made without legal authority, a state-court judgment that modifies the discharge order "is a legal nullity and void ab initio." *Id.*; *see also In re Cruz*, 254 B.R. 801, 811 (Bankr. S.D.N.Y. 2000) (applying *In re Pavelich*).

The Ninth Circuit, sitting en banc, applied the logic of *In re Pavelich* in *In re Gruntz*. When addressing the automatic stay, the Ninth Circuit stated that "[a]ny state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction to enforce the stay." *In re Gruntz*, 202 F.3d at 1082. Therefore, state-court proceedings that modify the stay "are void *ab initio*, [and] the bankruptcy court is not obligated to extend full faith and credit to such judgments. Infirm judgments are not entitled to full faith and credit in federal courts." *Id.* at 1082 n.6. Although the Ninth Circuit was discussing the effect of an automatic stay and not a discharge, the Ninth Circuit was focused on the injunctive nature of the automatic stay, *id.* at 1082 ("The automatic stay is an injunction issuing from the authority of the bankruptcy court . . . ."), which is a feature that both the automatic stay and the discharge order share, COLLIER ¶ 4-524.02[2], at 524-14.10 (Dec. 2006) ("Like the automatic stay of section 362(a), the discharge injunction is the equivalent of a court order." (footnote omitted)). Thus, there is persuasive precedent—consistent with the legislative history of § 524(a) and a leading bankruptcy treatise—that suggests that when a state-court judgment effectively modifies a bankruptcy court's discharge order, the state-court judgment should be considered void ab initio and the *Rooker-Feldman* doctrine would not apply.

We have never addressed the exact question of whether a lower federal court should abstain from reviewing a state-court judgment that modifies a discharge order or whether § 524(a) makes such a judgment void ab initio. The B.A.P. of the Sixth Circuit has, however, addressed a somewhat similar question in *Singleton v. Fifth Third Bank (In re Singleton)*, 230 B.R. 533 (B.A.P. 6th Cir. 1999). In that case, Fifth Third Bank obtained a state-court judgment on a note and sought to collect through the sale of collateral held by the obligor-company. After the state court scheduled the property sale, but before the sale took place, the obligor-company's owner filed for personal bankruptcy and sought to stop the property sale via the bankruptcy court's automatic stay. The state court denied the debtor's request to stay the sale, finding that the property to be sold was the property of the obligor-company, not the personal property of the debtor. The debtor filed an adversary proceeding in bankruptcy court, which the bankruptcy court dismissed. The B.A.P. of the Sixth Circuit reversed, holding that the *Rooker-Feldman* doctrine barred review of the state court's decision that the automatic stay did not cover the property to be sold. *In re Singleton* addresses an automatic stay, not a discharge order, but there is no reason to believe that *In re Singleton*'s hesitancy to declare void a state-court judgment would apply to any lesser degree in the context of discharge orders.

We acknowledge that the Eighth Circuit interpreted *In re Singleton* as requiring the application of the *Rooker-Feldman* doctrine in nearly the same circumstances that we face today. The Eighth Circuit held that a bankruptcy court could not review a state-court judgment ordering the foreclosure of property to satisfy debts that may have been discharged. *Ferren v. Searcy Winnelson Co. (In re Ferren)*, 203 F.3d 559, 560 (8th Cir. 2000) ("In our present case, the state court

determined that the judicial liens had not been discharged during federal bankruptcy proceedings. In our view, [the debtor's] only remedy at that point was to appeal within the state courts of Arkansas, because the bankruptcy court lacked jurisdiction to overturn the state court judgment and we decline to create an exception to the *Rooker-Feldman* doctrine."). We believe that the Eighth Circuit, however, has misinterpreted *In re Singleton*. *In re Singleton* did not create the blanket bar against federal-bankruptcy-court review of state-court decisions that the Eighth Circuit suggests; importantly, the B.A.P. of the Sixth Circuit held that 11 U.S.C. § 362, that statute governing the automatic stay, granted exclusive jurisdiction to the district court to grant relief from the stay, but did not preclude a state court "from determining whether a matter pending before it is stayed by a party's bankruptcy filing." *In re Singleton*, 230 B.R. at 539. The Sixth Circuit B.A.P.'s distinction between granting relief from the automatic stay and determining whether a particular action is stayed mirrors the Ninth Circuit's distinction in *In re Pavelich* between modifying a discharge order and determining dischargeability. For that reason, the Sixth Circuit B.A.P. in *In re Singleton* found it to be important that "[t]he Ohio Court did not presume to grant relief from any stay," *In re Singleton*, 230 B.R. at 539, because granting relief from the automatic stay (effectively modifying the stay) would exceed a state court's jurisdiction in the same way that modifying a discharge order exceeds a state court's jurisdiction. Thus, *In re Singleton*, *In re Pavelich*, and Collier all suggest that a state-court judgment that modifies a bankruptcy court's discharge order is void ab initio under § 524(a), and we agree.**²**

    In the instant case, the relevant question is whether the Kentucky courts modified the Debtor's discharge in bankruptcy by requiring the Debtor to indemnify Herr. The district court concluded that the Kentucky courts did modify the discharge order: "[T]he Pike Circuit Court and the Kentucky Court of Appeals did not attempt to construe the discharge or determine whether the debt at issue was within the bankruptcy court's discharge. Instead, the state courts modified the bankruptcy court's discharge of [the Debtor]'s debt to Herr." J.A. at 112 (Sept. 28, 2007, Order at 7). The district court, however, skipped an important question: was this debt discharged? Under *In re Pavelich*, state courts are allowed to construe the discharge in bankruptcy, but what they are not allowed to do is construe the discharge incorrectly, because an incorrect application of the discharge order would be equivalent to a modification of the discharge order. Similarly, the state-court judgment in the case at hand would constitute a modification of the discharge in bankruptcy only if the debt was actually discharged pursuant to the bankruptcy court's discharge order. *See Aguiluz v. Bayhi (In re Bayhi)*, 528 F.3d 393, 402 (5th Cir. 2008) (holding that lower federal courts must abstain from reversing state-court judgments affecting non-discharged debts, because such judgments do not modify the discharge in bankruptcy). We therefore **REMAND** the case to the district court so that court may remand to the bankruptcy court to determine whether the debt was discharged. If the debt was discharged, then the state-court judgment was a modification of the discharge order and is void ab initio. If the debt was not discharged pursuant to the bankruptcy court's discharge order, then the state-court judgment was not a modification of the discharge order and the *Rooker-Feldman* doctrine would bar federal-court jurisdiction.

---

**²***In re Singleton* cites *In re Gruntz* as a contrary opinion. *In re Singleton*, 230 B.R. at 539. *In re Singleton*, however, cites the vacated panel opinion of *In re Gruntz*, not the subsequent en banc opinion. The two *In re Gruntz* opinions, although they both declined to apply the *Rooker-Feldman* doctrine, are not identical. The vacated panel opinion stated quite broadly that "[d]eterminations regarding the applicability of the automatic stay in bankruptcy are exclusively within the purview of the federal courts," *In re Gruntz*, 166 F.3d 1020, 1029 (9th Cir.), *vacated by* 177 F.3d 729 (9th Cir. 1999), which is a position that fails to recognize the nuanced role that state courts can play in interpreting the scope of the stay. The en banc opinion was more narrow, holding that "[a]ny state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction to enforce the stay," *In re Gruntz*, 202 F.3d at 1082, which is consistent with the B.A.P.'s view in *In re Singleton* that Ohio courts lacked the jurisdiction to modify the automatic stay by granting relief from the stay.

## III. CONCLUSION

We hold that a state-court judgment that modifies a discharge in bankruptcy is void ab initio and the *Rooker-Feldman* doctrine would not bar federal-court jurisdiction over the Debtor's complaint. For the reasons explained above, we **VACATE** the district-court judgment, and we **REMAND** to the district court so that court may remand to the bankruptcy court to determine whether the debt in question was discharged and for further proceedings consistent with this opinion.