RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0145p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

IN RE: LINDA S. ISAACS,

*Debtor.*

————————————————————————

LINDA S. ISAACS,

*Plaintiff-Appellant,*

*v.*

DBI-ASG COINVESTOR FUND, III, LLC,

*Defendant-Appellee.*

No. 17-5815

———————

Appeal from the Bankruptcy Appellate Panel of the Sixth Circuit.
No. 16-8041—Guy R. Humphrey, C. Kathryn Preston, and Tracey N. Wise,
Bankruptcy Appellate Panel Judges.

United States Bankruptcy Court for the Western District of Kentucky at Paducah.
Nos. 5:14-ap-5021; 5:14-bk-50679—Thomas H. Fulton, Judge.

Argued:  January 24, 2018

Decided and Filed:  July 18, 2018

Before:  BATCHELDER, GILMAN, and ROGERS, Circuit Judges.

———————

## COUNSEL

**ARGUED:**  Marcus H. Herbert, MARCUS HERBERT LAW, Paducah, Kentucky, for Appellant.  John R. Tarter, REISENFELD & ASSOCIATES, LLC, LPA, Cincinnati, Ohio, for Appellee.  **ON BRIEF:**  Marcus H. Herbert, MARCUS HERBERT LAW, Paducah, Kentucky, for Appellant.  John R. Tarter, Gregory A. Stout, REISENFELD & ASSOCIATES, LLC, LPA, Cincinnati, Ohio, for Appellee.  Tara Twomey, NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER, San Jose, California, for Amicus Curiae.

———————————

**OPINION**

———————————

ROGERS, Circuit Judge.   Debtor Linda Isaacs filed for Chapter 13 bankruptcy and brought an adversary action seeking to invalidate a mortgage lien on her home, and to stop the sale of the home pursuant to a Kentucky state-court foreclosure judgment.   The adversary complaint sought to avoid the mortgage—as unperfected because the mortgage was never validly recorded—under the strong-arm provision of the bankruptcy code.   After an initial summary judgment motion was denied, debtor presented what she terms an "alternate argument" for relief, set forth in a "renewed" summary judgment motion, to the effect that the Kentucky state court which entered the foreclosure judgment erred in finding that the mortgage lien ever attached in the first place.   This argument was based on nonstandard language in the mortgage contract apparently requiring that the mortgage be recorded in order for its lien to attach at all.   The bankruptcy court ruled for debtor on this alternate theory.   The Bankruptcy Appellate Panel reversed, however, holding that the bankruptcy court lacked jurisdiction under the *Rooker-Feldman* doctrine, which generally keeps appeals from state-court decisions out of the lower federal courts.   Although we do not adopt all of the BAP majority's reasoning, the BAP was correct in overturning the bankruptcy court's judgment because ruling on the "alternate argument" indeed amounted to a federal court's ruling on an appeal from a state-court judgment, contrary to *Rooker-Feldman*.   However, the debtor's primary underlying claim, seeking avoidance of the mortgage lien under the strong-arm provision based on the lien's lack of perfection, sought relief independent of the validity of the state-court judgment, and thus does not implicate *Rooker-Feldman*.   A remand is accordingly appropriate to permit the court(s) below to rule on that claim in the first instance.

**I.**

On February 5, 2003, Linda Isaacs and her husband took out a home-equity loan, secured by a mortgage on their home in Princeton, Kentucky.  The original mortgagee, GMAC Mortgage Corporation, did not immediately record the mortgage.  On March 19, 2004, while the mortgage remained unrecorded, the Isaacs filed for Chapter 7 bankruptcy.  GMAC finally recorded the

mortgage on June 23, even though by this point the automatic stay from the bankruptcy was in effect, *see* 11 U.S.C. § 362, and GMAC had not obtained an order modifying or lifting the stay. Apparently, however, neither the Isaacs nor the Chapter 7 trustee realized that the mortgage had not been recorded before the bankruptcy began. The trustee therefore did not seek to avoid the mortgage, and the mortgage was listed as a secured claim on Schedule D of the bankruptcy petition. During the bankruptcy, the Isaacs reaffirmed several loan agreements, including an earlier mortgage on their property (also held by GMAC), but they did not reaffirm the mortgage at issue here. On July 12, 2004, the bankruptcy court entered a discharge order. On August 27, the trustee reported that there were no assets to administer, and the Chapter 7 case closed on August 30, 2004.

A decade later, the new owner of the mortgage, RoundPoint Mortgage Servicing Corporation, sought to foreclose on the Isaacs's home in Kentucky state court. On August 22, 2014, the Lyon County circuit court found that the Isaacs owed $101,958.82 on a promissory note secured by the mortgage, entered a default *in rem* judgment of foreclosure, and ordered a foreclosure sale. The foreclosure sale was scheduled for September 30, 2014, but, one day before the sale, Linda Isaacs filed a voluntary Chapter 13 petition in the U.S. Bankruptcy Court for the Western District of Kentucky.

Isaacs then filed an adversary complaint within the Chapter 13 case, seeking to avoid the mortgage through the so-called "strong-arm" power conferred by 11 U.S.C. § 544(a). Section 544(a)'s strong-arm power permits the bankruptcy trustee to "avoid transfers of property that would be avoidable by certain hypothetical parties." *Simon v. Chase Manhattan Bank* (*In re Zaptocky*), 250 F.3d 1020, 1023 (6th Cir. 2001). Here, Isaacs specifically sought to use § 544(a)(1) and (a)(3). Under § 544(a)(1), the trustee can step into the shoes of a hypothetical creditor who "at the time of the commencement of the [bankruptcy] case, . . . obtains . . . a judicial lien" on the debtor's property in question. Section 544(a)(3) permits the trustee to assume the status of a hypothetical "bona fide purchaser of real property . . . from the debtor . . . , that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the [bankruptcy] case." Section 544(a) then allows the trustee to avoid any lien that is inferior to the interest held by either of those hypothetical parties, as determined by

the relevant state law governing priorities. *Sovereign Bank v. Hepner* (*In re Roser*), 613 F.3d 1240, 1243 (10th Cir. 2010). In this case, Isaacs's adversary complaint sought to use the strong-arm power to avoid the mortgage on the ground that it was never properly perfected. (Arguably, the mortgage was unperfected because it was recorded in violation of the automatic stay, and actions taken to perfect a lien are "invalid" if they violate the automatic stay. *See Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 909 (6th Cir. 1993)). Thus, Isaacs's adversary complaint argued, the unperfected mortgage would lose under state priority law to either of the hypothetical parties contemplated by § 544(a)(1) and (a)(3), and it could therefore be avoided under the strong-arm power. That adversary complaint is the subject of this appeal.

By this point, the mortgage had been acquired by its present owner, appellee DBI-ASG Coinvestor Fund ("DBI"). The parties filed cross-motions for summary judgment in the bankruptcy court, which were initially denied. In a Renewed Motion for Summary Judgment, Isaacs presented an "alternate argument," distinct from her claim under the strong-arm power: she now argued that the mortgage lien had never attached in the first place, and thus that DBI had no valid lien to enforce. In support of this new argument, Isaacs noted that the mortgage agreement contained conflicting language about when its lien would attach to the collateral. In a section entitled "Description of Security," the mortgage agreement provided: "By signing this Mortgage, we hereby mortgage, grant and convey [the collateral]." This sentence might be understood to mean that the mortgage lien attached once the Isaacs *signed* the mortgage. But in another section entitled "Priority of Advances," the mortgage agreement stated: "The lien of this Mortgage will attach on the date this mortgage is recorded." Based on this latter provision, Isaacs now argued that the mortgage's lien did not attach until it was *recorded*. Thus, she claimed, it did not attach before the Chapter 7 petition was filed (because at that time the mortgage had yet to be recorded), and so the mortgage debt was unsecured at the start of the Chapter 7 bankruptcy. Moreover, because actions to perfect a lien are "without legal force or effect" when taken in violation of the automatic stay, *Easley*, 990 F.2d at 909, Isaacs contended that the eventual recording in violation of the automatic stay was invalid and accordingly ineffective to attach the lien. Therefore, the mortgage remained unattached and the debt remained unsecured throughout the Chapter 7 case, and the unsecured debt was discharged when the bankruptcy court issued its discharge order on July 12, 2004.

In response, DBI argued that the correct interpretation of the mortgage agreement was that the lien attached when the Isaacs signed it. Thus, the lien attached before the Chapter 7 bankruptcy began, meaning that it passed through the bankruptcy intact because, as the Supreme Court has held, "a creditor's right to foreclose on [a] mortgage survives or passes through [a] bankruptcy." *See Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). DBI also contended that the bankruptcy court lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine (which generally prohibits the lower federal courts from engaging in appellate review of state-court judgments), because Isaacs was effectively asking the bankruptcy court to sit as an appellate court over the state court's final foreclosure judgment.

The bankruptcy court granted summary judgment in favor of Isaacs, concluding that the mortgage agreement unambiguously provided that its lien did not attach until it was recorded. Thus, in the bankruptcy court's view, the lien did not attach before the Chapter 7 petition was filed, and the debt was unsecured during the prior bankruptcy proceedings and discharged by the discharge order.

The bankruptcy court also rejected DBI's *Rooker-Feldman* argument, basing its analysis on our decision in *Hamilton v. Herr* (*In re Hamilton*), 540 F.3d 367 (6th Cir. 2008). In *Hamilton*, a husband and wife each signed a promissory note. *Id.* at 369. They later divorced, after which the husband's father paid off the note on their behalf. *Id.* The husband's father then sued the now-ex-wife in state court to recover the money that he had used to pay the note. *Id.* At this point, the ex-husband filed for Chapter 7 bankruptcy and obtained a discharge. *Id.* at 369–70. The ex-wife then filed a third-party complaint against her ex-husband in the state-court proceeding, seeking to hold the ex-husband personally liable for indemnification in the event that she was held liable to his father. *Id.* at 370. The state court held the ex-wife liable to the father, and in turn held the ex-husband personally liable for indemnification to his ex-wife. *Id.* The ex-husband then filed a complaint in bankruptcy court, protesting that his liability on the promissory note had been discharged in the bankruptcy case, and that the state-court judgment therefore violated the discharge order. *Id.* at 370–71.

The case was appealed to this court, and we established a rule to accommodate the sometimes-conflicting demands of *Rooker-Feldman* and 11 U.S.C. § 524(a), the provision governing the effect of bankruptcy discharge orders. Section 524(a) provides:

> A discharge in a case under this title—
>
> > (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to a [discharged debt]; [and]
> >
> > (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor . . . .

The purpose of § 524(a) is to ensure that when a bankruptcy court enters an order discharging a debtor's outstanding debts, the debtor will be automatically protected against future attempts to collect on the discharged debts. *See Hamilton*, 540 F.3d at 372–73. This goal may, at times, conflict with the *Rooker-Feldman* doctrine. If a creditor goes to state court after a discharge to try to hold a debtor personally liable for a debt, the state court will have to determine whether the debt in question was included in the discharge order (in which case § 524(a) prohibits the creditor from collecting on it), or whether the debt was *not* discharged (in which case the state-court suit may proceed). If the state court determines that the debt was not discharged, the debtor may disagree and seek relief from this determination in bankruptcy court; the question then arises whether the bankruptcy court is effectively engaging in appellate review of the state court's decision in violation of *Rooker-Feldman*.

In *Hamilton*, we resolved this tension by establishing a rule that state courts may interpret discharge orders, but only if they do so correctly. Otherwise, they violate § 524(a) by modifying the discharge order. In other words, "state courts are allowed to construe the discharge in bankruptcy, but what they are not allowed to do is construe the discharge incorrectly, because an incorrect application of the discharge order would be equivalent to a modification of the discharge order." *Hamilton*, 540 F.3d at 375. When a state court interprets the discharge order incorrectly, its judgment is void *ab initio* and therefore poses no *Rooker-Feldman* bar to subsequent review in the lower federal courts. *Id.* at 376. *Hamilton* thus recognized a narrow

exception to *Rooker-Feldman*, under which a federal bankruptcy court may determine whether a state-court decision correctly interpreted a prior bankruptcy discharge order.

Returning to the present case, the bankruptcy court applied the rule from *Hamilton* and determined that the Kentucky state court, in entering its foreclosure judgment, had incorrectly concluded that the mortgage debt was not included in the 2004 discharge order. Therefore, the bankruptcy court held, the state court's judgment modified the prior discharge order, was void *ab initio*, and could be effectively overruled without violating *Rooker-Feldman*.

Because the bankruptcy court ruled in Isaacs's favor on her alternate claim that the lien never attached, it did not reach her original claim that the lien was never perfected and so could be avoided using the § 544(a) strong-arm power.

DBI appealed to the Bankruptcy Appellate Panel ("BAP"), and the BAP reversed. *Isaacs v. DBI-ASG Coinvestor Fund III, LLC* (*In re Isaacs*), 569 B.R. 135 (B.A.P. 6th Cir. 2017). The BAP also concluded that the mortgage agreement was unambiguous, but in the opposite way— that is, that the mortgage unambiguously provided that its lien attached when the parties signed it, not when it was recorded. *Id.* at 147–48. Thus, according to the BAP, the lien attached before the Isaacs filed their Chapter 7 petition and, because "a valid lien survives and rides through bankruptcy," *id.* at 145, the lien continued to exist after the Chapter 7 case closed, such that the state court could permissibly enter a foreclosure judgment ten years later. The state court's judgment was not void *ab initio* under *Hamilton* because it correctly construed the discharge order, and therefore, the BAP held, *Rooker-Feldman* deprived the bankruptcy court of subject-matter jurisdiction to review the state court's foreclosure judgment. The BAP also expressed doubts as to whether an *in rem* judgment, such as the state-court foreclosure judgment here, will ever modify a discharge order within the meaning of *Hamilton*. However, the BAP declined to answer this question definitively, and instead decided the case on the ground that the mortgage unambiguously provided for attachment upon signing, and so the lien attached before the bankruptcy began. *See id.* at 144–45.

Like the bankruptcy court, the BAP did not address Isaacs's original claim that the unperfected mortgage could be avoided under the § 544(a) strong-arm power, even though Isaacs raised it in her brief before the BAP.

Judge Wise concurred in the BAP's judgment but not in its reasoning. *See id.* at 151–53 (Wise, J., concurring in the judgment). She reasoned that, because valid liens are not affected by a discharge order, *see Johnson*, 501 U.S. at 83, the state court's determination that the mortgage lien was valid and its entry of an *in rem* foreclosure judgment necessarily could not have implicated the discharge order, and thus did not require an analysis under *Hamilton* at all. She therefore reasoned that the majority had engaged in a merits analysis without subject-matter jurisdiction, *Isaacs*, 569 B.R. at 151 (Wise, J., concurring in the judgment), and concluded:

> The majority's reasoning suggests the bankruptcy courts can serve as an appellate court over every foreclosure action under the rationale that an otherwise permissible in rem action may violate the discharge injunction if the lien is deemed invalid. Under this reasoning, the *Hamilton* exception swallows the *Rooker-Feldman* rule.

*Id.* at 152.

Isaacs now appeals.

**II.**

To determine whether the *Rooker-Feldman* doctrine bars this action, we must distinguish between Isaacs's two different claims. One seeks to avoid the mortgage on the ground that its lien never attached, that DBI therefore lacks an enforceable mortgage altogether, and that the Kentucky court wrongly enforced it. The other claim seeks to use the trustee's § 544(a) strong-arm power to avoid the mortgage on the ground that it was never perfected, regardless of whether the Kentucky court properly acted when it did. For the reasons that follow, *Rooker-Feldman* bars the first claim but not the second.

The *Rooker-Feldman* doctrine is properly applied on a claim-by-claim basis, even though it is jurisdictional in nature. The doctrine—which takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462

(1983)—generally provides that lower federal courts may not engage in appellate review of state-court decisions. *See Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013). It recognizes that Congress, in providing for federal review of state-court judgments in the U.S. Supreme Court, *see* 28 U.S.C. § 1257, chose not to permit appellate review of state-court decisions by the inferior federal courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005); *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002); *Rooker*, 263 U.S. at 416. Although jurisdictional in nature, it is nonetheless clear that the jurisdictional limit is properly applied on a claim-by-claim basis. *See, e.g.*, *Hall*, 727 F.3d at 453–57; *McCormick v. Braverman*, 451 F.3d 382, 392–96 (6th Cir. 2006).

## A.

Isaacs's alternate claim—that DBI lacks an enforceable mortgage because its lien never attached—is barred by *Rooker-Feldman* because it requires federal appellate review of the state court's foreclosure judgment. We determine whether *Rooker-Feldman* applies by looking to the injury alleged in the plaintiff's federal complaint. *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012). "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury . . . then the plaintiff asserts an independent claim" that is not subject to the *Rooker-Feldman* bar. *Id.* (alteration in original) (quoting *McCormick*, 451 F.3d at 393).

The source of the plaintiff's injury may in turn be determined by examining the request for relief. *Id.* Here, the claim upheld by the bankruptcy court, set out for the first time in the Renewed Motion for Summary Judgment, seeks "a declaration that the . . . mortgage is unenforceable and that the order foreclosing said mortgage, entered by the Lyon County Kentucky Circuit Court in Case No. 14-CI-0047 be declared to be unenforceable due to the fact that the underlying mortgage is void." This request for relief effectively asks the bankruptcy court to vacate the state-court judgment, and thus it clearly identifies the state-court judgment as the source of Isaacs's injury. Indeed, for Isaacs to prevail on this claim, the bankruptcy court would need to reach a conclusion precisely opposite from the state court on the issue of whether the mortgage lien attached, and then declare the state court's foreclosure judgment invalid. This closely resembles federal appellate review of the state court's judgment. The claim "invit[es]

district court review and rejection" of a state-court judgment, *see Exxon Mobil*, 544 U.S. at 284, and for this reason falls within *Rooker-Feldman*'s bar. Isaacs's recourse on this claim was to the Kentucky state appellate courts, not the federal bankruptcy court.

Isaacs asserts that this claim is not barred by *Rooker-Feldman* because it falls within the *Hamilton* exception for state-court judgments that modify bankruptcy discharge orders, but this argument fails because *Hamilton* does not apply here. The rule of *Hamilton* was created to reconcile *Rooker-Feldman* with the protection for debtors provided by 11 U.S.C. § 524(a). *See Hamilton*, 540 F.3d at 373 (noting the tension between "the *Rooker-Feldman* doctrine's aim to preserve state-court authority, and 11 U.S.C. § 524(a)'s aim to preserve the bankruptcy court's authority"). Section 524(a), however, has a limited scope; it only protects debtors from being held *personally liable* for discharged debts. To this end, § 524(a) voids judgments only to the extent that they are "a determination of the personal liability of the debtor," and only enjoins attempts to collect discharged debts "as a personal liability of the debtor." Section 524(a) does not, by contrast, prohibit a creditor from foreclosing on a valid lien that existed before the bankruptcy. *See Johnson*, 501 U.S. at 83 (citing, *inter alia*, 11 U.S.C. § 522(c)(2)); *see also Long v. Bullard*, 117 U.S. 617 (1886). *Hamilton*'s holding that a state court violates § 524(a) when it modifies a discharge order must be understood in light of § 524(a)'s limited reach. When a creditor forecloses on a lien, the debtor's personal liability is not at stake, and therefore § 524(a) does not come into the picture. Accordingly, a state court's determination that a pre-bankruptcy lien is valid will not, in the usual case, affect the debtor's personal liability, and so will not modify the discharge order within the meaning of *Hamilton*.

That is precisely what happened here. DBI's predecessor, RoundPoint, sought to enforce a lien on the Isaacs's property. The state court determined that the lien was valid and entered an *in rem* judgment of foreclosure. This judgment in no way affected the Isaacs's personal liability on the underlying mortgage debt. Accordingly, the state court's judgment did not violate

§ 524(a).[1]  *Hamilton* does not provide an exception to the general operation of *Rooker-Feldman* on these facts.

Isaacs also argues that *Rooker-Feldman* does not apply to this claim because Congress has expressly endowed the lower federal courts with subject-matter jurisdiction over "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," 28 U.S.C. § 157(b)(1), and, she contends, this claim falls within that grant of jurisdiction. Although it may be true that Isaacs's alternate ground does come under this grant of jurisdiction, that is not the end of the matter.  "*Rooker* and *Feldman* exhibit the limited circumstances in which [the Supreme Court's] appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a [lower federal court] from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority . . . ." *Exxon Mobil*, 544 U.S. at 291.  In other words, the question is not merely whether Congress has conferred jurisdiction at all, but whether it has conferred *appellate* jurisdiction to the lower federal courts over such a claim.  *Rooker-Feldman* rests on the notion that § 1257 generally indicates a congressional determination not to give the lower federal courts appellate jurisdiction to review state-court judgments.  Thus, the issue here is not only whether the bankruptcy courts would generally have subject-matter jurisdiction over Isaacs's claim, but also whether this particular exercise of that jurisdiction amounts to appellate review of a state-court judgment.  For the reasons discussed above, this claim requires appellate review of the state court's decision, and so is barred by *Rooker-Feldman*, the general grant of jurisdiction in 28 U.S.C. § 157(b) notwithstanding.

**B.**

Issacs's original claim, however, is not precluded by *Rooker-Feldman*.  This claim alleges that she is entitled to avoid the mortgage using the § 544(a) strong-arm power because the mortgage was never perfected.  Although Isaacs raised this claim before both the bankruptcy court and the BAP, neither ruled on it.  *Rooker-Feldman* does not apply to this claim because it does not require federal appellate review of the state court's judgment.

---

[1]Because this is so regardless of how the mortgage agreement is interpreted, we do not address or resolve the proper construction of the mortgage with respect to whether its lien attached.

As discussed previously, when a lien is unperfected, the strong-arm power may allow the bankruptcy trustee to avoid it by stepping into the shoes of a hypothetical judicial lien creditor, *see* 11 U.S.C. § 544(a)(1), or those of a hypothetical bona fide purchaser, *see id.* § 544(a)(3). Isaacs's original claim asserts that DBI's mortgage was never validly perfected because it was recorded in violation of the automatic stay, and actions taken in violation of the automatic stay are "invalid" and "without legal force or effect." *See Easley*, 990 F.2d at 909. Therefore, Isaacs says, she may avoid the unperfected mortgage under either § 544(a)(1) or (a)(3).

This claim is not barred by *Rooker-Feldman* because it does not invite the bankruptcy court to review the state court's handiwork. Although it is true that Isaacs's initial adversary complaint generally asks for relief from the state-court judgment, this particular claim does not call for "appellate review" of that judgment because the bankruptcy court could hold for Isaacs on this claim without finding any error in the state court's judgment whatsoever. The state-court foreclosure judgment determined only that the mortgage debt "is secured by a certain mortgage," which "constitutes a valid second mortgage upon the real estate." It made no findings with regard to perfection, nor were any necessary to its judgment. Thus, in entering its foreclosure judgment, the state court determined only whether the lien attached; the issue of perfection was irrelevant. This makes sense because, in Kentucky, a mortgage in general need not be perfected to be valid as between mortgagor and mortgagee. *Johnson v. Williams* (*In re Williams*), 490 B.R. 236, 239 (Bankr. W.D. Ky. 2013). Instead, "[t]he failure to record the mortgage only affects the priority of [creditors'] claims against the property." *Id.* The state court thus had occasion only to determine the validity of the mortgage as between debtor and creditor. There was no reason for it to make a finding as to whether the mortgage was perfected.

This means that the bankruptcy court could accept the state court's judgment as completely correct when entered, yet still rule for Isaacs on the ground that the lien was never perfected. No *Rooker-Feldman* problem is presented, then, because the bankruptcy court need not review the state court's judgment at all. The Supreme Court has emphasized that *Rooker-Feldman* is "a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lance v.*

*Dennis*, 546 U.S. 459, 464 (2006) (per curiam) (quoting *Exxon Mobil*, 544 U.S. at 284); *see also Skinner v. Switzer*, 562 U.S. 521, 531–32 (2011).  As we have explained,

> [a]ppellate review—the type of judicial action barred by *Rooker-Feldman*—consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law.  When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, *without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court)*, it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.  In this latter situation the conflict between the two judgments is to be resolved under preclusion doctrine, not *Rooker-Feldman*.

*Coles v. Granville*, 448 F.3d 853, 858–59 (6th Cir. 2006) (emphasis added) (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)).  Here, Isaacs's claim that she can avoid the lien because it was never perfected falls into the latter category: to rule in Isaacs's favor, the bankruptcy court would not even have to disagree with—let alone engage in "appellate review" of—the state court's judgment.  The bankruptcy court could assume the validity of the state-court judgment, and yet still determine that Isaacs is entitled to relief under federal bankruptcy law based on matters that were irrelevant to the state-court proceedings.  Under these circumstances, it can hardly be said that Isaacs's injury is "caused by" the state court's judgment.  *Rooker-Feldman* therefore does not apply to this claim.

## C.

DBI also contends that Isaacs lacks derivative standing to pursue a strong-arm claim under § 544(a).  Because § 544(a) speaks only of *the trustee's* right to avoid certain transfers and obligations, a debtor like Isaacs must obtain derivative standing to exercise this right.  A careful reading of DBI's brief shows that it makes only two narrow arguments on this point.  First, DBI argues that any § 544(a) claim belonged to the trustee from the prior Chapter 7 bankruptcy, and Isaacs therefore was required to reopen the Chapter 7 bankruptcy to obtain derivative standing from the trustee in that case.  Second, DBI contends that Isaacs had to seek derivative standing

*before* she filed her adversary complaint, and so her attempt to obtain derivative standing seven months afterward was too late.  Neither argument is persuasive.[2]

DBI's first contention is that Isaacs's § 544(a) claim still belongs to the trustee in the prior Chapter 7 case, and so Isaacs had to reopen that case to properly obtain derivative standing. This argument is based on 11 U.S.C. § 541, under which a debtor's property becomes part of the bankruptcy estate once she files a bankruptcy petition.  DBI contends that, per § 541, Isaacs's § 544(a) claim became part of the prior bankruptcy estate, and therefore belongs to the old Chapter 7 trustee rather than the trustee in this Chapter 13 case.  This argument is unavailing. First, DBI cites no authority in support of its contention other than the plain text of § 541.  But the filing of the Chapter 13 petition in this case created another bankruptcy estate under § 541, and DBI offers no suggestion why Isaacs's claims would not have been included in this new estate too.  Moreover, DBI's argument is inconsistent with the text of § 544(a), which expressly grants the trustee avoidance rights "as of the commencement of the case."   This language indicates that § 544(a) rights are granted anew each time the debtor files for bankruptcy, and so the Chapter 13 trustee (and by extension Isaacs) now has a § 544(a) claim separate from any the former Chapter 7 trustee may have had.

Second, DBI notes that the bankruptcy court granted Isaacs's oral motion for derivative standing on May 27, 2015, more than seven months after Isaacs filed her adversary complaint.[3] DBI urges this court to adopt a rigid rule that a plaintiff must obtain derivative standing before filing an adversary complaint, and that Isaacs therefore lacks derivative standing because she did not seek it until after filing her adversary complaint.  This argument fails, however, because such

---

[2]All other objections that DBI might have raised to Isaacs's derivative standing but did not include in its brief—such as the question of whether derivative standing is generally available to a Chapter 13 debtor bringing a § 544(a) avoidance action—are forfeited, and so we do not address them here.  *See* Fed. R. App. P. 28(a)(8), (b); *Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999).

An objection to derivative standing can be forfeited because it does not go to the bankruptcy court's subject-matter jurisdiction.  The question is not whether the controversy is of a form on which the judicial power may act, but rather whether Congress, in enacting § 544(a), intended to allow debtors to wield the strong-arm power. Because limits on derivative standing are not jurisdictional, the existence of derivative standing does not go to the bankruptcy court's subject-matter jurisdiction.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4 (2014).

[3]The trustee did not object to Isaacs's motion.

a bright-line rule would be inconsistent with the equitable nature of derivative standing. As we have previously recognized, "the ability to confer derivative standing . . . is a straightforward application of bankruptcy courts' equitable powers," among which is the power "to craft flexible remedies in situations where the [Bankruptcy] Code's causes of action fail to achieve their intended purpose." *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.* (*In re Trailer Source, Inc.*), 555 F.3d 231, 242 (6th Cir. 2009) (ellipsis in original) (quoting *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 567, 568 (3d Cir. 2003)). A bright-line rule that bankruptcy courts may never authorize derivative standing after a debtor has filed an adversary complaint would frustrate this flexible equitable power. Moreover, such a rule would deviate from the practice of the "[n]umerous federal courts [that] have allowed retroactive grants of derivative standing under appropriate circumstances." *Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark* (*In re Nat'l Forge Co.*), 326 B.R. 532, 545–46 (W.D. Pa. 2005) (collecting cases); *see also PW Enters. v. N.D. Racing Comm'n* (*In re Racing Servs., Inc.*), 540 F.3d 892, 903–04 (8th Cir. 2008).

Accordingly, DBI's challenges to the bankruptcy court's grant of derivative standing fail.

**D.**

Other issues regarding Isaacs's strong-arm avoidance claim should be decided in the first instance in the court or courts below. Neither the bankruptcy court nor the BAP passed on that claim, and the parties have not focused on its merits in their briefing before this court. We express no view as to its proper resolution.[4]

---

[4]DBI's brief suggests that a notice of lis pendens might have been filed by DBI's predecessor RoundPoint in the course of initiating foreclosure proceedings. The parties have not focused on this issue in the present appeal, but on remand it may be necessary to determine the effect, if any, that a notice of lis pendens would have on Isaacs's ability to use the strong-arm power. *See generally Naja, LLC v. Jack's Co.* (*In re Dynamis Grp., LLC*), 441 B.R. 841, 847 (Bankr. W.D. Ky. 2011). We express no view on this question.

**E.**

Amici curiae argue (among other things) that Isaacs may avoid the mortgage as a preferential transfer under 11 U.S.C. § 547.  However, this argument was not included in Isaacs's opening brief before this court, so it is forfeited.  *See Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003).  "While an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties.  To the extent that the amicus raises issues or make[s] arguments that exceed those properly raised by the parties, we may not consider such issues."  *Cellnet Commc'ns, Inc. v. FCC*, 149 F.3d 429, 443 (6th Cir. 1998) (internal citations omitted).

**III.**

The judgment of the BAP is vacated in part and the case is remanded for further proceedings consistent with this opinion.